BOLAND et al., Appellees,

v.

HAMMOND, Appellant, et al.

[Cite as *Boland v. Hammond* (2001), 144 Ohio App.3d 89.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 00CA2722.

Decided Jan. 5, 2001.

*Rick L. Faulkner,* for appellees.

*J.B. Marshall, Jr.,* for appellant.

HARSHA, Judge.

The defendant-appellant, Donald Hammond, appeals an order of the Scioto Court of Common Pleas granting summary judgment in favor of the plaintiffs-appellees.

This is a securities investment case brought under the Ohio Securities Act, R.C. 1707.01 *et seq.* The events giving rise to the cause of action date back to 1992 when Donald Hammond, a minister in Portsmouth, Ohio, was introduced to

Wendell Rogers, a fellow minister in Louisiana. Rogers was also the president of an investment company, Sunbelt Development Company ("Sunbelt"). A friendship developed between the two, and Hammond began investing in Sunbelt. Hammond eventually became the portal for other investors in Ohio who loaned money to Rogers and Sunbelt, including the plaintiffs-appellees.

Hammond described the investment process in his deposition. Rogers would contact Hammond and tell him he needed a certain sum of money, *i.e.*, offering an investment opportunity in Sunbelt at a set capital investment, such as $100,000 on one occasion. Rogers would accept an investment only at a specified amount, and then only from Hammond—he did not want to deal with other investors. Hammond would then contact his acquaintances to determine if they wanted to invest with Rogers and Sunbelt. He told them to make their checks payable to him and that he would forward the money to Rogers and Sunbelt.

Terry Boland, Doug Young, and Lou Thompson, the plaintiffs-appellees in this case, learned of the investment opportunities with Rogers and Sunbelt through Greg Collier, Hammond's nephew. Collier and the plaintiffs-appellees were all co-workers at Martin Marietta. All three plaintiffs-appellees invested in Sunbelt through Collier, who forwarded the money to Hammond. Hammond would wire the money to Rogers in Louisiana. In return, Rogers would send all of the Sunbelt promissory notes and documents, as well as any payment of interest or principal on the investments, to Hammond, who would then distribute them to investors, including the plaintiffs-appellees.

On one occasion, Hammond arranged for a meeting between Rogers and the plaintiffs-appellees at the Shoney's Restaurant in Portsmouth, Ohio. At the meeting, Rogers proposed buying an interest in Cedar Hill Game Call Company ("Cedar Hill"), a Louisiana corporation that sold hunting paraphernalia. All three of the plaintiffs-appellees made additional investments with Rogers and Sunbelt following the meeting.

Rogers and Sunbelt eventually defaulted on the promissory notes and agreements. Each of the plaintiffs-appellees lost at least a portion of their investment. They initiated their complaint in the Scioto County Court of Common Pleas against Rogers, his wife, Kimberly Rogers, Hammond, and Sunbelt. They later amended their complaint to add Greg Collier. Rogers, Kimberly Rogers, and Sunbelt refused service of the amended complaint, and, as a result, plaintiffs-appellees were granted default judgment against them. Greg Collier was later released from the suit after filing bankruptcy. This left Hammond, who moved for summary judgment. Plaintiffs-appellees responded by filing their own motion for partial summary judgment against Hammond. The trial court denied Hammond's motion, but granted plaintiffs-appellees' motion and entered summary judgment in their favor. All other causes of action against Hammond were

dismissed. On May 17, 2000, the trial court awarded specified damages based on the summary judgment order. Hammond filed a timely notice of appeal and assigns the following errors for our review:

"I. For plaintiff to be successful in proving monetary damages owed by defendant to plaintiff for alleged violation of securities laws and misrepresentation, said plaintiffs must prove that the alleged violation materially affected the contemplated protection that the alleged violation of Revised Code Chapter 1707 provides protection for and in the circumstances herein the violation did not affect the protection that would have been afforded had said securities regulation applied and therefore the purchaser has no remedy against defendant Donald Hammond for his forwarding the monies of plaintiffs to the seller in the securities being Sunbelt and Wendell Rogers.

"II. Where one who has invested in a corporation or in securities is contacted by another potential investor, he has no duty to volunteer information. Such first investor cannot be held liable for the losses of other investors where there is no evidence that he was a party to the plan to solicit new investors. Therefore said plaintiff is not liable to defendants.

"III. Defendant was not an agent for the owner and seller of the securities but was an investor of in [sic] the securities and merely forwarded plaintiffs' money to the sellers of the securities and therefore was the agent of the plaintiffs. Defendant did not participate in the sale of the securities on behalf of the owner and seller of the securities and therefore did not violate ORC Chapter 1707. Defendant was a mere investor the same as plaintiffs."

While these "statements" are lengthy and do not technically comply with App.R. 16(A)(3), we proceed to address the two specific issues that can be distilled from the appeal. First, Hammond argues that his particular involvement in the investment transactions was insufficient to make him liable to plaintiffs-appellees under R.C. 1707.43. Next, he argues that failing to register securities in violation of R.C. 1707.44(C)(1) was merely a trivial violation that did not materially affect the protection contemplated by the provision.

■ We review a trial court's decision to grant summary judgment on a *de novo* basis. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. We apply the same criteria as the trial court, which is the standard contained in Civ.R. 56. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to

one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. See *Grafton, supra.*

The party moving for summary judgment has the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. To meet its burden, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *id.*

If the moving party satisfies its burden, then the burden shifts to the nonmoving party to offer specific facts showing a genuine issue for trial. Civ.R. 56(E); *Dresher, supra.* The nonmoving party must come forward with documentary evidence rather than resting on unsupported allegations in the pleadings. *Kascak v. Diemer* (1996), 112 Ohio App.3d 635, 638, 679 N.E.2d 1140, 1141–1142. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing the existence of a genuine issue for trial. *State ex rel. Mayes v. Holman* (1996), 76 Ohio St.3d 147, 666 N.E.2d 1132.

The trial court granted summary judgment on appellees' fifth cause of action brought under R.C. 1707.43, which states, in part:

"Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and *every person who has participated in or aided the seller in any way* in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, *unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.*" (Emphasis supplied.)

The appellees met their burden under *Dresher* with affidavits of both parties as well as documents from the Ohio Department of Commerce. This evidence showed that the promissory notes and agreements were "securities" as defined in R.C. 1707.01(B); that a "sale" occurred as defined in R.C. 1707.01(C)(1); and that Hammond "participated in or aided the seller" in making the sales pursuant to R.C. 1707.43. Appellees supplemented their summary judgment motion with a certified copy of a cease and desist order from the Ohio Department of Com-

merce as evidence that the notes and agreements were nonexempt and were not registered in violation of R.C. 1707.44(C)(1).

Hammond did not present any evidence to contradict that a "sale" of "securities" had taken place, or that the securities were neither registered nor exempt from registration in violation of R.C. 1707.44(C)(1). Instead, Hammond argues that he did not "participate in or aid" Rogers in making the sales as required in R.C. 1707.43 because he was not an agent of Rogers, a broker, or an investment advisor.

There are no factual issues in this case concerning what role Hammond played in the sales transactions between appellees and Rogers and Sunbelt. The appellees relied heavily on Hammond's own affidavit in their motion for summary judgment. The issue presented is whether those actions, as a matter or law, constituted "participation in or aiding" in the sale of unregistered securities in violation of R.C. 1707.43.

■ Under R.C. 1707.43, a buyer has an action for the purchase price against every person who *participated in or aided* the seller in any way in making the sale. *Ohio, Dept. of Commerce, Div. of Securities v. Buckeye Fin. Corp.* (1978), 54 Ohio St.2d 407, 8 O.O.3d 408, 377 N.E.2d 502. However, R.C. 1707.431 excludes certain persons from being deemed to have effected, participated in, or aided in an unlawful sale of securities. Under R.C. 1707.431(B), "Any person, other than an investment advisor or an investment advisor representative, *who brings any issuer together with any potential investor, without receiving, directly or indirectly, a commission, fee, or other remuneration based on the sale* of any securities by the issuer to the investor" will not be deemed to have made an offer or sale. (Emphasis supplied.) See Friedman, Ohio Securities Law & Practice (1996) 11–13.

■ The uncontroverted evidence in this case establishes that Hammond relayed the proposed terms of the sales from Rogers to investors, including appellees, and that he arranged and attended meetings between appellees and Rogers. In addition, Hammond collected the money for the investments, distributed the promissory notes and other documents from Rogers and Sunbelt, and distributed principal and interest payments. Although he did not have any direct contact with appellees, Hammond was heavily involved in the actual sales transactions between Roger and Sunbelt and the appellees. By his own admission, the investment opportunities in Sunbelt would never have been presented to appellees if not for the fact that he disseminated the information or "spread the word" about the opportunities. More important, he was the only avenue for investment. Rogers insisted on dealing only with Hammond, not other investors. This evidence shows that Hammond was much more involved than just bringing

Rogers together with investors. He in fact participated in and aided Rogers and Sunbelt in the sales of the securities to appellees.

Furthermore, Hammond stood to gain financially if investments were ultimately made in Sunbelt. In his deposition, Hammond indicated that he and Rogers purchased real estate in Scioto County, Ohio, with the intent to develop the property into a game reserve and then lease it or sell it to Cedar Hill if Cedar Hill "became a company." Thus, he had a stake in raising the capital for Sunbelt to invest in Cedar Hill. See, generally, *Callahan v. Class One, Inc.* (Dec. 22, 1989), Montgomery App. No. 11550, unreported, 1989 WL 155167, reversed on other grounds (1991), 58 Ohio St.3d 76, 567 N.E.2d 1036 (defendant received remuneration for R.C. 1707.431 purposes from the infusion of capital into a corporation in which he had a stake). Hammond also stood to gain as an investor, since he could not take advantage of the investment opportunities with Rogers and Sunbelt unless he pooled his investment with others to acquire the specified sum needed to invest.

Given his extensive involvement in the sales transactions and his financial stake in obtaining investors for Rogers and Sunbelt, we find that a reasonable person could only conclude that Hammond "participated in or aided" Rogers and Sunbelt in the sale of securities to the appellees and that he is not excluded from liability for his participation under R.C. 1707.431.

▌ Next, Hammond argues that failure to register the securities in violation of R.C. 1707.44(C)(1) was merely a trivial violation that did not materially affect the protections contemplated by the provision. He contends that registration would not have changed the outcome of the investment transaction, which was a loss of money by both parties. The Supreme Court of Ohio has addressed this issue in a line of cases dating back to 1968. See *Bronaugh v. R. & E. Dredging Co.* (1968), 16 Ohio St.2d 35, 45 O.O.2d 321, 242 N.E.2d 572; *Pencheff v. Adams* (1983), 5 Ohio St.3d 153, 5 OBR 318, 449 N.E.2d 1277; and *Callahan v. Class One, Inc.* (1991), 58 Ohio St.3d 76, 567 N.E.2d 1036. In *Pencheff*, the Supreme Court held that, as a matter of law, failure to comply with the registration requirement in R.C. 1707.44(C)(1) materially affects the protection contemplated by the provision and entitles an investor to relief provided under R.C. 1707.43. See, also, *Crater v. Internatl. Resources, Inc.* (1993), 92 Ohio App.3d 18, 633 N.E.2d 1212; and *Bell v. Le–Ge, Inc.* (1985), 20 Ohio App.3d 127, 20 OBR 160, 485 N.E.2d 282. Therefore, Hammond's second argument is meritless.

Construing the evidence in a light most favorable to Hammond, the nonmoving party, we find that reasonable minds can come to one conclusion, which is that Hammond is liable to plaintiffs-appellees under R.C. 1707.43. Thus, having no

genuine issue as to any material fact remaining to be litigated, the trial court properly granted summary judgment in favor of plaintiffs-appellees.

*Judgment affirmed.*

KLINE and EVANS, JJ., concur.