[Cite as *Wells Fargo v. Smith*, 2013-Ohio-855.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| WELLS FARGO BANK, | : | |
| Plaintiff/Appellee, | : | CASE NO. CA2012-04-006 |
| - vs - | : | O P I N I O N<br>3/11/2013 |
| DONALD RAY SMITH,<br>EXECUTOR OF THE ESTATE<br>OF EVELYN MAY SMITH, | : | |
| Defendant/Third-Party Plaintiff/<br>Appellant, | : | |
| | : | |
| - vs - | : | |
| | : | |
| AMERIFIRST FINANCIAL, et al., | : | |
| Third-Party Defendants/Appellees. | : | |
| | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CVE20101299


Scott A. King, Austin Landing, 10050 Innovation Drive, Suite 400, Dayton, Ohio 45342-4934, for plaintiff/appellee

Andrew M. Engel, 7071 Corporate Way, Centerville, Ohio 45459, for plaintiff-appellee, Wells Fargo Bank and defendant/third-party plaintiff/appellant, Donald Ray Smith, Executor of the Estate of Evelyn Mae Smith

Sebaly, Shillito & Dyer, Dianne F. Marx, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423, for third-party defendants/appellees, Amerifirst Financial and Gary Hamminga

James Winkelman, 43 Hummingbird Way, Amelia, Ohio 45102, third-party defendant, pro se

**M. POWELL, J.**

{¶ 1} Third-party plaintiff/appellant, Donald Ray Smith, Executor of the Estate of Evelyn Mae Smith (Mrs. Smith), deceased, appeals a decision of the Brown County Court of Common Pleas granting summary judgment to third-party defendants/appellees, AmeriFirst Financial Corporation and Gary Hamminga. For the reasons stated below, we affirm.

{¶ 2} This case involves a failed investment in fraudulent unregistered securities purchased by Mrs. Smith. The fraudulent securities were part of a multi-million dollar Ponzi scheme run by Diversified Lending Group (DLG). American Benefits Concepts (ABC), a company that sold Medicare supplemental insurance and investments, offered the DLG investment to its clients. ABC structured the financing of the investment so that their clients would mortgage their homes and apply the proceeds to purchase the DLG investment. In return, DLG was to make the customer's monthly mortgage payments. Any extra proceeds from the customer's investments would be given directly to the customer. In order to close the loans, ABC used several mortgage banking firms, including AmeriFirst. Eventually, DLG was unable to meet its obligations and the Ponzi scheme collapsed.

{¶ 3} AmeriFirst started closing mortgage loans for ABC's clients in 2007. This relationship began when Gary Hamminga, a loan officer with AmeriFirst, unexpectedly encountered an acquaintance at a restaurant who was an ABC employee. The employee expressed to Hamminga that ABC was looking for banks to close mortgages for its customers that were investing with DLG and explained the DLG investment. Hamminga agreed to look at some of ABC's customers to see if he could assist them in obtaining a mortgage. Hamminga received many referrals from ABC during 2007 and 2008. Most of the referrals he received from ABC were customers who wished to invest in DLG.

{¶ 4} During the relationship with ABC, Hamminga did not solicit clients to invest in DLG or promote DLG in any way. Hamminga did not contact ABC's clients directly, instead

an ABC employee would notify Hamminga if a customer was interested in obtaining a mortgage or the client would contact Hamminga directly. The compensation arrangement between the companies was customary, neither AmeriFirst nor ABC gave the other compensation for referrals. Instead, AmeriFirst earned money once the loan was closed and the loan officers received their customary 40 percent of the gross revenue earned by AmeriFirst on the loan. AmeriFirst also did not plan or organize underwriting of the mortgage loans. There was no legal relationship between the two companies.

{¶ 5} In the fall of 2007, Hamminga was informed by an ABC salesman that Mrs. Smith was interested in obtaining a mortgage. Hamminga then contacted Mrs. Smith who told him that she was not interested in a mortgage. Hamminga relayed this information to ABC and did not speak with Mrs. Smith further. About a month later, Hamminga was contacted by an ABC employee who told him that Mrs. Smith had changed her mind about procuring a mortgage. Hamminga called her a second time. During this conversation, he reminded her that she previously did not want a mortgage. Mrs. Smith assured Hamminga that she had changed her mind and wanted a mortgage. Hamminga then proceeded with the mortgage process.

{¶ 6} After this conversation, Hamminga obtained financial information from Mrs. Smith and confirmed that she qualified for a mortgage. When filling out the loan application, Hamminga included the income Mrs. Smith expected to receive from the DLG investment on her application even though this income was not needed in order to qualify her for the mortgage loan. Hamminga then arranged a date for Mrs. Smith to sign documents so that she could close on the loan. During this process, Hamminga believed that Mrs. Smith was competent and not confused about the events that were taking place. Hamminga kept ABC informed of the status of Mrs. Smith's loan application even though this was not his normal custom. Except for this communication, Hamminga performed his normal banking

procedures for closing a mortgage.

{¶ 7} In January 2008, Mrs. Smith closed on the mortgage loan. Three days after the closing, AmeriFirst performed its normal business practice of giving the loan proceeds directly to Mrs. Smith. AmeriFirst did not advise Mrs. Smith as to how to invest her money. Subsequently, Mrs. Smith used the loan proceeds to invest in the DLG notes. After Mrs. Smith's loan was closed, Hamminga provided information regarding Mrs. Smith's loan number, account number, and mortgage payment to ABC although this was not his normal custom. Hamminga communicated this information to ABC to facilitate DLG's payment of Mrs. Smith's mortgage as she had agreed. All other communications between the companies were according to Hamminga's normal business practices.

{¶ 8} Eventually, DLG ceased paying Mrs. Smith's mortgage. Following a SEC investigation, DLG was placed into a receivership in March of 2009. In December 2010, Wells Fargo filed a complaint for foreclosure.[1] Mrs. Smith responded and filed a third-party complaint against AmeriFirst and Hamminga alleging, among other things, that the parties participated in and aided the illegal sale of unregistered securities. In July 2011, Mrs. Smith passed away and her son, Donald Ray Smith, as the executor of her estate, proceeded with the suit. AmeriFirst and Hamminga moved for summary judgment on all the claims against them. On March 12, 2012, the trial court granted AmeriFirst and Hamminga's motion for summary judgment.

{¶ 9} Executor now appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN IMPLICITY OVERRULING [EXECUTOR'S] MOTION TO STRIKE THE AFFIDAVIT OF JASON JUBERG.

---

1. Mrs. Smith initially filed a suit against AmeriFirst and Hamminga in a separate, earlier action. However, this case was voluntarily dismissed.

{¶ 12} Executor argues that the court erred in overruling his motion to strike the affidavit of Jason Juberg. Juberg was the president of ABC and submitted an affidavit that discussed ABC's relationship with AmeriFirst. Executor contends that Juberg's affidavit violated Civ.R. 56(E) because Juberg testified to the conduct of persons without setting forth the proper foundation for his personal knowledge of that conduct. Additionally, executor maintains that the affidavit was improper because it referenced certain documents that were not attached to the affidavit.

{¶ 13} The determination of a motion to strike is within the trial court's broad discretion. *Ireton v. JTD Realty Invests., L.L.C.*, 12th Dist. No. CA2010-04-023, 2011-Ohio-670, ¶ 19. A court's ruling on a motion to strike will be not reversed on appeal absent an abuse of that discretion. *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, ¶ 13. A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 11.

{¶ 14} The trial court did not expressly rule on executor's motion to strike Juberg's affidavit in its final judgment entry. Generally, when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion. *Lee v. Barber*, 12th Dist. No. CA2000-02-014, 2001 WL 733449, *3 (July 2, 2001). Therefore, executor's pending motion to strike Juberg's affidavit was implicitly overruled by the grant of summary judgment in favor of AmeriFirst and Hamminga.

{¶ 15} Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment. *State ex rel. Varnau v. Wenninger*, 12th Dist. No. CA2009-02-010, 2011-Ohio-3904, ¶ 7. Those materials are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). To be considered in a summary judgment motion, an affidavit "shall be made on personal knowledge, shall set forth such facts as

would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated in the affidavit." Civ.R. 56(E).

{¶ 16} Personal knowledge is defined as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay." *Re v. Kessinger*, 12th Dist. No. CA2007-02-044, 2008-Ohio-167, ¶ 32. Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E). *Churchill v. G.M.C.*, 12th Dist. No. CA2002-10-263, 2003-Ohio-4001, ¶ 11. Additionally, in the absence of a specific statement, personal knowledge may be inferred from the contents of an affidavit. *Bank One, N.A. v. Swartz*, 9th Dist. No. 03CA008308, 2004-Ohio-1986, ¶ 15. However, "[i]f particular averments contained in an affidavit suggest that it is unlikely that the affiant has personal knowledge of those facts, then * * * something more than a conclusory averment that the affiant has knowledge of the facts would be required." *Id.* at ¶ 14, quoting *Merchants Natl. Bank v. Leslie*, 2d Dist. No. 3072, 1994 WL 12433 (Jan. 21, 1994).

{¶ 17} Additionally, documents that are referred to in an affidavit must be attached to the affidavit and must be sworn or certified copies. Civ.R. 56(E). When an affiant relies on documents in his affidavit and does not attach those documents, the portions of the affidavit that reference those document must be stricken. *Third Federal S. & L. Assn. of Cleveland v. Farno*, 12th Dist. No. CA2012-04-028, 2012-Ohio-5245, ¶ 10. *See Wenninger* at ¶ 10 (striking portions of affidavit where documents were reviewed and relied upon in drafting affidavit but not attached to affidavit or served therewith).

{¶ 18} In the case at bar, Juberg's affidavit contained several paragraphs which outlined the background of ABC's involvement with DLG, and ABC's and AmeriFirst's actions regarding Mrs. Smith and the DLG investment. Juberg explained that he was president of ABC and that ABC offered an investment to its clients through DLG. Juberg then states that

he is named as a defendant in a separate civil case filed by Mrs. Smith and that he is "familiar with the claims" made in this case and has "reviewed relevant documents relating to it," including "telephone logs Bates labeled ABC Wert 0349-0571." Juberg avers in paragraph 11 that based on his review of these documents, any communication between ABC and AmeriFirst regarding Mrs. Smith's investment was solely for the purposes of determining if DLG had paid the monthly mortgage payment for Mrs. Smith. These documents were not attached to Juberg's affidavit. Additionally, Juberg makes statements regarding AmeriFirst's actions in paragraphs 11, 13, 14, and 16-19. For example, Juberg states that AmeriFirst never planned or organized the underwriting of the DLG investment, AmeriFirst never prepared any documents for ABC to attract potential investors, and AmeriFirst never offered any confidential information to ABC regarding Mrs. Smith.

{¶ 19} We find that the court abused its discretion when it admitted portions of Juberg's affidavit. First, the admission of the paragraphs of Juberg's affidavit that relied on his review of the telephone logs and other records was in error as these documents were not attached to the affidavit. Second, the court erred in admitting portions of Juberg's affidavits that discussed AmeriFirst's conduct in Mrs. Smith's transaction and the DLG investment in general. While Juberg's statement that he was president of ABC during all relevant times was sufficient to demonstrate personal knowledge of ABC's actions, this statement did not demonstrate how he acquired personal knowledge of AmeriFirst's conduct. We cannot infer Juberg's personal knowledge of AmeriFirst's behavior from the statements made in the affidavit as Juberg did not aver that he was also employed with AmeriFirst or had some other relationship that would provide him with this information. Juberg is not competent to testify regarding Amerifirst's actions without providing a basis for his personal knowledge of AmeriFirst.

{¶ 20} Therefore, the court abused its discretion when it admitted portions of Juberg's

affidavit that relied on documents that were not attached to the affidavit. Additionally, the court erred when it admitted the portions of Juberg's affidavit that discussed AmeriFirst's actions when these statements were not based on personal knowledge. Thus, paragraphs 7, 9, 11, 13, 14, 16-19 are stricken. The rest of the affidavit is admissible.

{¶ 21} Executor's first assignment of error is partially sustained.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE COURT OF COMMON PLEAS ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 24} In his second assignment of error, executor argues the court erred in granting summary judgment on a number of issues. This court's review of a trial court's ruling on a summary judgment motion is de novo, which means we review the judgment independently and without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. No. CA2010-11-117, 2011-Ohio-4041, ¶ 18, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). We utilize the same standard in our review that the trial court uses in its evaluation of the motion.

{¶ 25} Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party must then present evidence that some issue of material fact remains to be resolved; it may not rest on the mere allegations or denials in its pleadings. *Id.* All evidence submitted in connection with a motion for summary

judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St.2d 25, 28 (1970).

## R.C. 1707.43

{¶ 26} Executor first contends that the trial court erred when it granted summary judgment in favor of AmeriFirst and Hamminga for his claim under R.C. 1707.43. Executor argues there was a genuine issue of material fact regarding whether AmeriFirst and Hamminga aided or participated in the sale of the DLG investment.

{¶ 27} R.C. 1707.43 provides remedies for a purchaser in an unlawful sale of securities. The statute allows a purchaser to void every sale or contract for sale made in violation of Chapter 1707. *Id.* at (A). The statute goes on to state, "[t]he person making such sale or contract for sale, and *every person that has participated in or aided the seller in any way in making such sale or contract for sale*, are jointly and severally liable to the purchaser * * *." (Emphasis added.) *Id.* The language in this provision has been held to be broad in scope. *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 391 (10th Dist.2000).

{¶ 28} Courts have considered several factors in deciding whether a person or entity shall be responsible for the sale of illegal securities under R.C. 1707.43(A). These factors include relaying information, such as the proposed terms of the sale, from the sellers to the investors, arranging or attending meetings between the investors and the sellers, collecting money for investments, distributing promissory notes and other documents to the investors from the sellers, distributing principal and interest payments to the investors, and actively marketing the security or preparing documents to attract investors. *Boland v. Hammond*, 144 Ohio App.3d 89, 94 (4th Dist.2001). *See Gerlach v. Wergowski*, 65 Ohio App.3d 510, 513-514 (1st Dist.1989); *Perkowski v. Megas Corp.*, 55 Ohio App.3d 234 (9th Dist.1990).

{¶ 29} In a case involving whether a creditor bank could be held liable under R.C. 1707.43(A), the Tenth District noted that an important factor for determining liability is

whether the bank's actions went beyond normal commercial banking activities. *Fed Mgt. Co.* at 393. In *Fed. Mgt. Co.*, summary judgment was inappropriate where a bank's action in reorganizing debt, directly participating in the underwriting of the investment, and sharing secret information about the investment with other bankers were not normal banking activities. *Id.* at 377. On the other hand, a bank was not liable for the illegal sale of securities when the bank simply collected and held premiums from investors, facilitated payments from the investment, and assisted in distribution of the investment. *Boomershire v. Lifetime Capital, Inc.*, 2nd Dist. No. 22179, 2008-Ohio-14, ¶ 15. Instead, "[t]he willingness of a bank to become the depository of funds does not amount to a personal participation or aid in the making of a sale." *Hild v. Woodcrest Assn.*, 59 Ohio Misc. 13, 30 (M.C.1977).

{¶ 30} We find that there was no genuine issue of material fact as to whether AmeriFirst or Hamminga "participated in or aided" ABC in selling the DLG investment. The evidence established that both AmeriFirst and Hamminga engaged in normal banking procedures in regards to the DLG investment. In Hamminga's deposition, he testified that he would often receive referrals from ABC regarding mortgages that needed to be closed. Hamminga was aware that most of the mortgages would be used for an investment into DLG but he never solicited clients for this investment. AmeriFirst never paid ABC any compensation for these referrals and neither AmeriFirst nor Hamminga ever received a referral fee from ABC. Hamminga communicated with ABC like all other companies from which he received a referral except that he informed ABC of the client's loan number, loan amount, and the date the mortgage payment was due. He explained he did this to facilitate ABC's payments of these clients' mortgages every month. Further, the president of AmeriFirst averred that there was no legal relationship between the two companies, no AmeriFirst employees ever planned, organized, or participated in the underwriting of the DLG investment, and AmeriFirst did not prepare any documents for ABC to attract investors to

DLG.

{¶ 31} The evidence also established that Hamminga's actions in processing Mrs. Smith's mortgage did not amount to "participating in or aiding" an illegal sale of securities. Hamminga did not solicit Mrs. Smith. Hamminga first contacted Mrs. Smith when an ABC representative told him she was interested in obtaining a mortgage on her home. However, Hamminga did not proceed with the mortgage at that time because Mrs. Smith told him that she was not interested in obtaining a mortgage. Approximately one month later, Hamminga contacted Mrs. Smith again after an ABC employee told him she was interested. Hamminga reminded her that she previously declined the mortgage offer, but she indicated that was she interested this time.

{¶ 32} Hamminga proceeded with his normal routine of obtaining the borrower's information and sending the loan to processing and underwriting. Hamminga acknowledged that he included the potential DLG income on Mrs. Smith's loan application but stated that she qualified for the mortgage without the inclusion of this income. Mrs. Smith's loan was closed and Hamminga directly forwarded her the proceeds of the loan as this was his usual practice. Hamminga did not encourage Mrs. Smith to invest the money into DLG. AmeriFirst and Hamminga's knowledge of Mrs. Smith's use of the money, investing in what they believed to be a lawful company, does not equate to participating in or aiding in the sale of securities. Further there was no evidence that Mrs. Smith was incompetent.

{¶ 33} Therefore, there were no genuine issues of material fact regarding whether AmeriFirst or Hamminga participated in or aided the illegal sale of securities. Thus, we find that the trial court did not err in finding summary judgment was appropriate for executor's R.C. 1707.43 claim.

**Tort of Aiding and Abetting Fraud**

{¶ 34} Executor next argues that the trial court erred when it granted summary

judgment to executor's civil claim of "aiding and abetting." While executor does not specify what tortious act AmeriFirst or Hamminga aided and abetted, he essentially argues that they aided and abetted fraud.[2] The trial court found that Ohio does not recognize a claim of aiding and abetting fraud.

{¶ 35} Until recently, Ohio courts of appeals expressed differing opinions regarding whether a claim for aiding and abetting tortious conduct was cognizable as outlined by 4 Restatement of the Law 2d, Torts Section 876 (1979). *See Fed Mgt. Co.*, 137 Ohio App.3d at 382; *Whelan v. Vanderwist of Cincinnati, Inc.*, 11th Dist. No. 2012-G-2999, 2011-Ohio-6844, ¶ 19; *Collins v. Natl. City Bank*, 2nd Dist. No. 19884, 2003-Ohio-6893, ¶ 32. This Restatement section provides that a person acting in concert with a wrongdoer is liable if the person:

> (a) Does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) Knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) Gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

{¶ 36} The Ohio Supreme Court recently stated that "[t]his court has never recognized a claim under 4 Restatement 2d of Torts, Section 876 (1979), and we decline to do so under the circumstances of this case." *De Vries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.*, 132 Ohio St.3d 516, 2012-Ohio-3828, ¶ 2. *See Sacksteder v. Senney*, 2nd Dist. No. 24993, 2012-Ohio-4452, ¶ 76. Therefore, Ohio does not recognize a cause of action for aiding and abetting a tortious act. A person is liable only if he engages in behavior that is unlawful and

---

2. Count XIII of executor's amended complaint alleges that AmeriFirst and Hamminga aided and abetted ABC and Winkleman in defrauding Mrs. Smith. However, executor's precise argument of the type of tortious act that

not simply because he aided or abetted wrongful conduct. *Fed. Mgt. Co.* at 381. *See In re Natl. Century Fin. Ent., Inc., Invest. Litigation v. Deloitte & Touche, L.L.P.*, __ F.Supp.2d __, 2012 WL 5334027, *20 (Oct. 26, 2012). Consequently, the trial court did not err in granting summary judgment as to executor's aiding and abetting claim.

## R.C. 1345.031

**{¶ 37}** Executor contends the trial court erred when it granted summary judgment on his claim under R.C. 1345.031. R.C. 1345.031(B)(8) requires suppliers of consumer residential mortgages to provide consumers with a disclosure form informing consumers of their rights when completing a mortgage transaction. Executor argues that the court erred when it relied on an affidavit which discussed this disclosure form but did not attach the form to the affidavit. Executor also asserts that genuine issues of material fact remain as to whether AmeriFirst or Hamminga violated the disclosure requirements under the statute.

**{¶ 38}** We begin by addressing executor's first argument, whether the court erred in relying on paragraphs of an affidavit that mentioned the disclosure form when the form was not attached to the affidavit. In support of their motion for summary judgment, AmeriFirst and Hamminga submitted an affidavit of Mark Jones, President of AmeriFirst. Jones' affidavit outlined AmeriFirst's relationship with ABC and the company's role in closing Mrs. Smith's mortgage. Paragraphs 15 and 16 of Jones' affidavit referenced the disclosure form that AmeriFirst provided Mrs. Smith in compliance with R.C. 1345.031(B)(8). Jones stated that Mrs. Smith signed and returned this form. AmeriFirst and Hamminga did not provide a copy of this form to the trial court.

**{¶ 39}** We find that the trial court did not err in relying on paragraphs 15 and 16 of Jones' affidavit. While executor did not cite any legal authority in his brief to explain why the

---

the parties have concert liability for is irrelevant due to the Ohio Supreme Court's recent decision discussed below.

court erred in relying on this affidavit, it appears executor argues that the affidavit did not comply with Civ.R. 56(E). As discussed in the first assignment of error, Civ.R. 56(E) requires that all documents referenced in an affidavit be attached to that affidavit. When a party does not attach those documents, the portions of the affidavit that refer to the documents must be stricken. *Third Federal S. & L. Assn. of Cleveland*, 12th Dist. No. CA2012-04-028, 2012-Ohio-5245, ¶ 10. However, a party waives this argument if it fails to file a motion to strike the affidavit. *Hammock v. Sav. of Am.*, 12th Dist. No. CA90-01-006 (Sept. 10, 1990); *Darner v. Richard E. Jacobs Group, Inc.*, 8th Dist. No. 89611, 2008-Ohio-959, ¶ 15. In this case executor did not move to strike Jones' affidavit. Therefore, executor has waived this argument on appeal and the trial court properly considered Jones' affidavit under the R.C. 1345.031 claim.

{¶ 40} Next, we determine whether the trial court erred in granting summary judgment to AmeriFirst and Hamminga regarding this claim. R.C. 1345.031(A) provides that no supplier shall commit an unconscionable act in connection with a consumer residential mortgage. An unconscionable act includes:

> [f]ailing to disclose to the consumer at the closing of the consumer transaction that a consumer is not required to complete a consumer transaction merely because the consumer has received prior estimates of closing costs or has signed an application and should not close a transaction that contains different terms and conditions than those the consumer was promised.

*Id.* at (B)(8).

{¶ 41} Ohio Adm.Code 109:4-3-23(A) provides that no suppliers shall fail to disclose to the consumer at the closing of the consumer transaction the above mentioned disclosures. To comply with R.C. 1345.031, "a supplier must provide the notice attached to this rule as addendum A * * *." *Id.* at (B).

{¶ 42} In support of its motion for summary judgment, AmeriFirst and Hamminga

submitted Mark Jones' affidavit and Greg Hamminga's deposition. In Hamminga's deposition, he explained that the company utilizes a computer system to insure AmeriFirst complies with each state's mortgage and consumer protection laws. Under this system, the loan processor enters a state name which in turn generates the application and all the required closing documents for that state. He used this system to ensure he complied with Ohio's laws in closing a mortgage. In Jones' affidavit, he stated:

> 15. AmeriFirst provided a form for Evelyn Mae Smith to sign at her closing on January 25, 2008. This form was computer generated and complied with R.C. 1345.031(8). [sic]
>
> 16. To the best of my knowledge, Evelyn Mae Smith returned the form referenced in paragraph 15, executed and dated. * * *

{¶ 43} The evidence established that AmeriFirst utilized a form that complied with R.C. 1345.031(B)(8) and this was given to Mrs. Smith. Hamminga explained that AmeriFirst closes mortgages in many states and utilizes a system to ensure compliance with each state's laws. Jones' affidavit clearly stated that the R.C. 1345.031(B)(8) form was utilized in Mrs. Smith's mortgage closing. Therefore, AmeriFirst pointed to evidentiary materials that showed there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. Executor's response to appellee's evidence was that Jones stated that his company provided a form in compliance with "R.C. 1345.031(8)" instead of R.C. 1345.031(B)(8). In light of the fact that there is no subsection 8 in R.C. 1345.031 and there was no doubt that the specific provision, R.C. 1345.031(B)(8) was at issue during the summary judgment motions, we find executor's argument unpersuasive. As discussed above, the evidence established that there was no genuine fact that AmeriFirst complied with R.C. 1345.031(B)(8). Therefore, the court did not err in granting summary judgment for this claim.

## R.C. 1349.41

{¶ 44} Executor contends that AmeriFirst and Hamminga violated R.C. 1349.41 when they engaged in a transaction that was fraudulent and not in good faith and fair dealing. In particular, executor argues that the transaction was unfair because AmeriFirst and Hamminga failed to comply with R.C. 1345.031(B)(8) and provide Mrs. Smith a disclosure form. Additionally, executor asserts that there were genuine issues of material fact regarding whether AmeriFirst and Hamminga acted in good faith because they knew and specifically intended for Mrs. Smith to invest in a highly questionable investment that was ultimately fraudulent.

{¶ 45} R.C. 1349.41(B) provides, "[a] lender shall not engage in a transaction, practice, or course of business that is not in good faith or fair dealing, or that operates a fraud upon any person, in connection with the attempted or actual making, purchase, or sale of any mortgage loan." This statute was enacted in 2007 and the parties have not cited any Ohio case law interpreting this statute. Based upon our research, the interpretation of this statute appears to be one of first impression in Ohio.

{¶ 46} Good faith has been defined generally as "'honesty in fact in the conduct or transaction concerned.'" *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832 (2nd Dist.), ¶ 126-127, quoting *Casserlie v. Shell Oil Co.*, 121 Ohio St.3d 55, 57, 2009-Ohio-3, ¶ 10. The Supreme Court of Ohio has also defined the term as follows:

> A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

{¶ 47} Fraud has been defined as "[a] knowing misrepresentation of the truth or

concealment of a material fact to induce another to act to his or her detriment." *Black's Law Dictionary* (9th Ed.2009). *See Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998).

{¶ 48} We find that the evidence established that AmeriFirst and Hamminga did not violate R.C. 1349.41 in participating in the closing of Mrs. Smith's mortgage loan. First, AmeriFirst and Hamminga did not act in bad faith or perpetrate a fraud on Mrs. Smith in regards to the disclosure form required by R.C. 1345.031(B)(8). As discussed in the previous issue, the evidence showed that AmeriFirst provided this form. Mark Jones' affidavit and Greg Hamminga's deposition explained AmeriFirst's actions in providing the disclosure form to Mrs. Smith and the general process AmeriFirst uses to provide consumers with the disclosure form. Thus, since the evidence established that the disclosure form was provided, this court refuses to find any bad faith associated with the alleged failure to provide this form.

{¶ 49} Additionally, there was no evidence that AmeriFirst and Hamminga did not act in good faith, fair dealing, or perpetrated a fraud on Mrs. Smith. In Hamminga's deposition, he explained that AmeriFirst engaged in normal banking procedures when it closed Mrs. Smith's loan. He did not solicit Mrs. Smith; he stopped contact with Mrs. Smith when she told him that she was not interested in obtaining a mortgage, and then reinitiated contact only when ABC informed Hamminga that Mrs. Smith was interested in acquiring a mortgage again. Additionally, after closing the loan, Hamminga gave Mrs. Smith the mortgage proceeds directly, as this was his usual custom after closing a mortgage. Hamminga also testified that Mrs. Smith understood the loan she was entering into and did not seem incompetent. The evidence also established that there was no legal relationship between ABC and AmeriFirst. AmeriFirst never received nor gave any referral fees to ABC, and neither AmeriFirst nor Hamminga solicited clients or promoted the DLG investment.

{¶ 50} Therefore, the trial court did not err in granting summary judgment to AmeriFirst and Hamminga on the R.C. 1349.41 claim. There was no evidence that AmeriFirst or

Hamminga did not act in good faith, fair dealing or operated a fraud upon Mrs. Smith.

**Civil Conspiracy**

{¶ 51} In his last issue, executor argues the court erred when it granted summary judgment on the civil conspiracy claim. Specifically, executor contends that the trial court erred when it *sua sponte* granted summary judgment as AmeriFirst and Hamminga did not move for summary judgment on this issue.

{¶ 52} It is well-settled that a trial court "may not *sua sponte* grant summary judgment premised on issues not raised by the parties." *Safe Auto Ins. Co. v. Semenov*, 12th Dist. No. CA2008-10-123, 2009-Ohio-2334, ¶ 10 quoting *Ranallo v. First Energy Corp.*, 11th Dist. No. 2005-L-187, 2006-Ohio-6105, ¶ 26. When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought. Such specificity is necessary "in order to allow the opposing party a meaningful opportunity to respond." *Patterson v. Ahmed*, 176 Ohio App.3d 596, 2008-Ohio-632 (6th Dist.), ¶ 13, quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. Contrary to executor's assertion, AmeriFirst and Hamminga did move for summary judgment on the civil conspiracy claim. AmeriFirst stated numerous times in its motion for summary judgment that it was seeking summary judgment "on all of Third Party Plaintiff's claims." Thus, the trial court's grant of summary judgment on the civil conspiracy claim was not *sua sponte* as AmeriFirst moved for this relief on the claim.

{¶ 53} Additionally we note that there was no genuine issue of material fact regarding whether AmeriFirst or Hamminga were liable for civil conspiracy. A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Mohme v. Deaton*, 12th Dist. No. CA2005-12-133, 2006-Ohio-7042, ¶ 36, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995). An action for civil conspiracy cannot be maintained unless an

underlying unlawful act is committed. *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722 (8th Dist.), ¶ 41.

{¶ 54} We have held that the trial court correctly granted summary judgment in favor of AmeriFirst and Hamminga on all counts alleged against them. Without an underlying tort, executor cannot establish a claim for civil conspiracy. In addition, there is no evidence in the record to support a claim that AmeriFirst or Hamminga conspired with any other entity to harm Mrs. Smith. Consequently, the trial court did not err in granting summary judgment in favor of AmeriFirst and Hamminga on the civil conspiracy claim.

{¶ 55} Executor's second assignment of error is overruled.

{¶ 56} The trial court's judgment is affirmed. Executor's first assignment of error is sustained to the extent the court erred in admitting portions of Jason Juberg's affidavit. Executor's second assignment of error is overruled as the remaining admissible evidence established that AmeriFirst and Hamminga were entitled to judgment as a matter of law and that there were no genuine issues of material fact on all of executor's claims. Thus, the court did not err in granting summary judgment in favor of AmeriFirst and Hamminga against executor.

{¶ 57} Judgment Affirmed.

RINGLAND, P.J., and PIPER, J., concur.