DOE, APPELLEE, *v.* ARCHDIOCESE OF CINCINNATI, APPELLANT.

[Cite as *Doe v. Archdiocese of Cincinnati,*
116 Ohio St.3d 538, 2008-Ohio-67.]

(No. 2006–1155—Submitted June 5, 2007—Decided January 16, 2008.)

PFEIFER, J.

{¶ 1} Because the trial court dismissed the complaint in this case on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the allegations of the complaint are presumed to be true. *State ex rel. CNG Fin. Corp. v. Nadel,* 111 Ohio St.3d 149, 2006-Ohio-5344, 855 N.E.2d 473, ¶ 13.

{¶ 2} Appellee, Jane Doe, had a sexual relationship with Norman Heil, a priest, in 1965. Doe was 16 years old at that time and became pregnant by Father Heil. Doe gave birth on November 7, 1965, and placed the baby for adoption through St. Joseph's Orphanage.

{¶ 3} In 2004, Ms. Doe brought this action against appellant, the Archdiocese of Cincinnati, for negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with familial relationships, loss of filial consortium, breach of fiduciary duty, and negligent supervision and retention. Doe claims that Father Heil, Sister Mary Patrick, and other unidentified agents of the Archdiocese made statements before the baby was born that pressured her into placing the baby for adoption. Doe claims that she was told that she must "suffer in silence," that adoption was the "only answer," and that her baby would not be baptized unless he or she was placed for adoption. Doe also claims that Father Heil told her that he could not continue as a priest if she kept the baby. Doe was dismissed from the Catholic high school she had been attending and was not permitted to return after she gave birth. After being suspended, Doe lived at Maple Knoll Hospital and Home until her baby was born; she claims that the Archdiocese paid her hospital bills and doctor's fees. Doe claims that these and

other statements and actions "demonstrate malice, aggravated or egregious fraud, oppression or insult" by the Archdiocese because the Archdiocese "authorized, ratified or participated in these acts" through its employees Father Heil and Sister Mary Patrick.

{¶ 4} Doe alleges that as a result of the many statements and threats made to her, she "has suffered severe and debilitating mental anguish," resulting in hospitalization and years of psychotherapy. Though all of the alleged statements and threats were made in 1965, the complaint was not filed until 2004 because the distress that Doe suffered rendered her unable to knowingly, willingly, and voluntarily "act on the fact that she had been victimized by [the Archdiocese]."

{¶ 5} The Archdiocese filed a motion to dismiss under Civ.R. 12(B)(6), alleging that Doe's complaint failed to state a claim upon which relief may be granted because her claims were untimely filed. The trial court granted the motion and dismissed the complaint. The court of appeals affirmed in part and reversed in part, determining that the trial court had erred in dismissing Doe's claims based upon the statutes of limitations because Doe had sufficiently alleged the necessary elements of equitable estoppel. The court of appeals also concluded that Doe had failed to state a claim upon which relief can be granted regarding the claims of negligent infliction of emotional distress, loss of filial consortium, and negligent supervision and retention and affirmed the dismissal of those claims. We accepted the Archdiocese's discretionary appeal.

{¶ 6} This case involves a variety of tort claims arising from statements made or actions taken in 1965. The complaint was filed in 2004. Doe does not argue that her claims were filed within the applicable statutes of limitations. Accordingly, for purposes of this case, we will assume that claims were not timely filed. Doe asserts that equitable estoppel should operate to prevent the Archdiocese from asserting that her claims are time-barred. For the reasons that follow, we conclude that the doctrine of equitable estoppel does not apply to this case.

{¶ 7} The concept of estoppel is little changed since the mid–19th century, when we stated, "As a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." *McAfferty v. Conover's Lessee* (1857), 7 Ohio St. 99, 105. In *Russell v. Fourth Natl. Bank* (1921), 102 Ohio St. 248, 269–270, 131 N.E. 726, we stated, "An estoppel arises when one is concerned in or does an act which in equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position." More recently, we stated, "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel.*

*Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188. Implicit in each of these definitions is the principle that "[t]he purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

{¶ 8} If the Archdiocese is correct that Doe's complaint was filed outside the applicable statute of limitations—and Doe does not claim otherwise—equitable estoppel will benefit Doe only if she has pleaded facts that, if proved, will demonstrate the efforts of the Archdiocese to prevent her from filing a lawsuit. Only those facts are relevant to a resolution of this case. We conclude that, even when viewed in the light most favorable for Doe, the complaint contains no allegation that, if proved, would establish that the Archdiocese did anything that was designed to prevent Doe from filing suit. Thus, equitable estoppel cannot save her complaint from dismissal for being untimely filed.

{¶ 9} To be sure, Father Heil and Sister Mary Patrick did not want the identity of the father of Doe's baby to become public knowledge, and a lawsuit would have revealed his identity. But to infer from the acts alleged in the complaint an intent to prevent Doe from filing suit requires a leap of logic that we are not prepared to take. The complaint contains many statements attributed to Father Heil and Sister Mary Patrick, but none of them address, even implicitly, the general subject of a lawsuit or litigation, and none of them reflect or imply an effort to discourage Doe from filing a lawsuit. The purpose of equitable estoppel is to prevent fraud, and none of the statements or threats constitute an actual or constructive fraud. See *Frantz*, 51 Ohio St.3d at 145, 555 N.E.2d 630. There is also no allegation in the complaint that Father Heil, Sister Mary Patrick, or anyone else associated with the Archdiocese had any contact with Doe after 1965. See *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, at ¶ 45 (plaintiff asserting equitable estoppel as bar to statute-of-limitations defense must establish subsequent and specific actions by defendants that prevented plaintiff from timely filing suit). In sum, nothing in the complaint suggests that the Archdiocese prevented Doe from filing a lawsuit in a timely manner. We conclude that the Archdiocese cannot be equitably estopped from asserting a defense premised on the expiration of the applicable limitations period.

{¶ 10} If anything, equity in this case is on the side of the Archdiocese. "Equity demands that rights should be asserted before lapse of time has made a judicial inquiry difficult and uncertain by reason of the death of parties, the loss of papers and books, the death of witnesses, and the intervention of equities; and where delay, under such circumstances, exceeds the time fixed for suit by statutes of limitations in an analogous action at law, the burden is on the party

asserting such right to explain the delay and to show that it would be inequitable and unjust to refuse the aid of the court in the enforcement of the right." *Russell,* 102 Ohio St. 248, 131 N.E. 726, at paragraph four of the syllabus. In this case, the Archdiocese would be unfairly prejudiced in its ability to defend itself. The passage of nearly 40 years, at the time the case was filed, is likely to have obscured the recollection of witnesses associated with the events, assuming they are still living and can be located, and judicial inquiry would be, at best, "difficult and uncertain." Further, assuming the truth of Doe's allegations of mental anguish, hospitalization, and years of psychotherapy stemming from the 1965 events, there is no indication why 2004 was the first time in nearly 40 years that Doe was able to file suit.

{¶ 11} The ultimate purpose of equitable estoppel is to "promote the ends of justice." *Frantz,* 51 Ohio St.3d at 145, 555 N.E.2d 630. In this case, that purpose is best achieved by dismissing the case. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's order granting the Archdiocese's motion to dismiss.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, EDWARDS, and CUPP, JJ., concur.

JULIE A. EDWARDS, J., of the Fifth Appellate District, sitting for LANZINGER, J.

———————

Mezibov & Jenkins Co., L.L.P., Marc D. Mezibov, and Christian A. Jenkins, for appellee.

Dinsmore & Shohl, L.L.P., Mark A. Vander Laan, Kirk M. Wall, and Timothy S. Mangan, for appellant.

Squire, Sanders & Dempsey, L.L.P., David J. Young, and Christopher Haas, urging reversal for amicus curiae, Catholic Conference of Ohio.