[Cite as *Marietta College v. Valiante*, 2013-Ohio-5405.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

MARIETTA COLLEGE,                          :

    Plaintiff-Appellee,                  :          Case No.   13CA12

    vs.                                      :

ERIK VALIANTE,                             :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                 :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        David C. Perduk, 3603 Darrow Road, Stow, Ohio 44224

COUNSEL FOR APPELLEE:         Michael J. Lubes, 526 Superior Avenue East, Suite 630,
                              Cleveland, Ohio 44114

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 11-25-13
ABELE, J.

{¶ 1}   This is an appeal from a Marietta Municipal Court judgment in favor of Marietta

College, plaintiff below and appellee herein.   Erik Valiante, defendant below and appellant

herein, assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
> MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S
> CLAIMS."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S
CLAIMS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S
CLAIMS."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY NOT APPLYING THE
AFFIRMATIVE DEFENSES OF WAIVER AND ESTOPPEL AS
A BAR TO ALL OF APPELLEE'S CLAIMS."

{¶ 2} On August 10, 2005, Laura Valiante signed an "Application and Master Promissory Note" under the Federal Direct PLUS Loan William D. Ford Federal Direct Loan Program. The promissory note listed Marietta College as the school and Erik J. Valiante as the student.

{¶ 3} On September 6, 2005, appellee's Office of Student Financial Services (SFS) advised appellee's Office of Student Accounts (SA) that a PLUS application had been approved on appellant's behalf. Thus, appellee credited appellant's account in the amount of $4,312 for the unrealized PLUS loan proceeds.

{¶ 4} In early November 2005, the United States Department of Education informed SFS that it had refused to "book" Laura's loan because she signed the note in pencil. SFS never had a loan fail to "book" and, thus, did not have a policy in place for PLUS loans that failed to "book."

{¶ 5}  On November 17, 2005, SFS sent another promissory note to Laura and requested her to complete it in ink.   On February 7, 2006, appellee credited appellant's account in the amount of $4,312 for the PLUS loan proceeds.

{¶ 6}  On May 20, 2006, appellant received his degree from appellee.   When appellant received his degree, SFS had not informed SA that Laura's PLUS loan had failed to book.   SA is responsible for ensuring that a student has fulfilled all financial obligations before the student receives a degree.   On June 28, 2006, appellee's records showed that appellant's student account did not have a remaining balance.

{¶ 7}  On July 12, 2006, and again on April 11, 2007, SFS sent another promissory note to Laura and requested her to complete it in ink.   On May 24, 2007, SFS sent another request to Laura that she complete a promissory note using ink.   This letter informed Laura that if appellee did not receive a properly signed promissory note by June 1, 2007, it would cancel the loan and reverse the PLUS loan entry from appellant's tuition account.

{¶ 8}  On July 5, 2007, SFS informed SA that the Department of Education had rejected Laura's application.   On October 25, 2007, appellee charged appellant's account in the amount of $8,844 for "Tuition–F105-Sp06 Tuition."

{¶ 9}  On April 16, 2012, appellee filed a complaint against Erik Valiante and Laura Valiante for breach of contract, breach of implied contract, and unjust enrichment.[1]   Appellant denied liability and filed a counterclaim.   Appellant's counterclaim alleged that appellee negligently or intentionally misrepresented his account status when he graduated in May 2006.

_____

[1] On August 27, 1012, the court dismissed count four of appellee's complaint against Laura.

Appellant asserted that in May 2006, appellee issued a "paid in full" "zero balance" account to appellant.

{¶ 10} Both parties requested summary judgment. Appellant asserted that he is entitled to judgment as a matter of law because the doctrines of waiver and estoppel precluded appellee from holding him liable for unpaid tuition. Appellant argued that by conferring his degree and issuing him a zero account balance, appellee waived its right to collect the tuition charged to appellant's student account. Appellant further asserted that appellee is estopped from collecting the unpaid tuition from him. To support his argument, appellant relied upon appellee's billing procedures as outlined in its 2005-2006 Undergraduate Program Catalog. The catalog states: "The College will not issue transcripts or confer the student's degree until the student satisfies all financial obligations to the college." Appellant contended that appellee "showed it had no intention of holding [him] to any further financial obligations, otherwise it would not have issued his diploma."

{¶ 11} On March 1, 2013, the trial court entered summary judgment in appellee's favor and against appellant regarding his counterclaim. The court entered a $8,844 judgment in appellee's favor. This appeal followed.

{¶ 12} Although appellant raises four assignments of error, he does not argue them separately in his brief. App.R. 16(A)(7) requires an appellant to separately argue each assignment of error and App.R. 12(A)(2) authorizes us to disregard any assignment of error that an appellant fails to separately argue. Thus, we would be within our authority to summarily overrule appellant's assignments of error and affirm the trial court's judgment. E.g., Mortgage Electronic Registration Sys. v. Mullins, 161 Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d 326,

¶22.   In the interests of justice, however, we will review the assignments of error to the extent that appellant specifically addresses them.

{¶ 13} Appellant's four assignments of error challenge the propriety of the trial court's summary judgment.   Appellant does not, however, specifically argue each assigned error. Instead, appellant posits three reasons why the trial court wrongly entered summary judgment in appellee's favor and wrongly denied appellant's summary judgment motion.

{¶ 14} Appellant first asserts that the trial court erred by failing to conclude that the doctrines of waiver and estoppel preclude appellee from seeking the unpaid tuition.   Appellant contends that appellee is estopped from seeking payment because it chose to accept payment from a third-party payor, issued a zero balance account to appellant, and conferred his degree. Appellant additionally argues that by issuing him a zero account balance and conferring his degree, appellee manifested its belief that appellant had fulfilled all financial obligations and thus waived its right to collect the unpaid tuition from appellant.

{¶ 15} Appellant next argues that he "relied to his detriment" upon appellee's conduct in issuing him a zero account balance and conferring his degree.   Appellant claims that he suffered the following injuries due to appellee's actions: (1) he was unable   to help his mother properly complete a PLUS loan application so that his tuition would be funded through a low-cost student loan upon which his mother would be liable; (2) he was unable to seek other means of financial support; (3) he was not given the chance to withdraw until he could secure the funds to pay the tuition; (4) appellee is seeking payment from him even though his mother had agreed to pay it; and (5) he must now pay the tuition due without the ability to finance it through a low-cost student loan.

{¶ 16} Appellant further argues that the facts fail to show that he has been unjustly enriched.   Appellant asserts that because appellee has other legal remedies against other parties, appellant is not unjustly enriched.

{¶ 17} Appellant has not raised any specific arguments that appellee failed to demonstrate the absence of a material fact regarding the elements of its claims for breach of contract or its action on an account, but instead, limits his argument to whether the doctrines of waiver and estoppel bar those claims.   Appellant also has not raised any argument regarding the merits of his claim for negligent or intentional misrepresentation.   We therefore do not address these claims.

## A

## SUMMARY JUDGMENT STANDARD

{¶ 18} Appellate courts conduct a de novo review of trial court summary judgment decisions.   E.g., Troyer v. Janis, 132 Ohio St.3d 229, 2012–Ohio–2406, 971 N.E.2d 862, ¶6; Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision.   E.g., Brown v. Scioto Bd. of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio App.3d 409, 411–12, 599 N.E.2d 786 (1991).   To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law.   Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, written admissions, affidavits, transcripts
> of evidence in the pending case, and written stipulations of fact, if any, timely

filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 19} Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. E.g., Smith v. McBride, 130 Ohio St.3d 51, 2011–Ohio–4674, 955 N.E.2d 954, ¶12; New Destiny Treatment Ctr., Inc. v. Wheeler, 129 Ohio St.3d 39, 2011–Ohio–2266, 950 N.E.2d 157, ¶24; Vahila v. Hall, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

B

ESTOPPEL AND WAIVER

{¶ 20} Appellant first argues that the trial court wrongly determined that no genuine issues of material fact remain regarding whether the doctrines of estoppel and waiver preclude appellee's claims for unpaid tuition. Appellant asserts that because appellee informed him that he had a zero account balance and conferred his degree, appellee is estopped from seeking the unpaid tuition. Appellant also argues that by conferring his degree, appellee manifested an

intent to waive the provision in the student handbook that it would not "confer the student's degree until the student satisfies all financial obligations to the college."

1

ESTOPPEL

{¶ 21} As a general rule, "estoppel" is "a defensive theory barring parties from asserting a claim or a defense where their representations have induced action or the forbearance of a definite and substantial character, and injustice can be avoided only by its enforcement." 42 Ohio Jurisprudence 3d, Estoppel and Waiver, Section 1 (2011).

> "The concept of estoppel has its roots in ethical premises and is the legal expression of normative policies that equity jurisprudence has fostered and developed over the centuries. In essence, the expression of estoppel in the form of a rule is that one party will not be permitted to deny that which, by his words, his acts, or his silence (when there was an obligation to speak), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage."

First Federal Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc., 11 Ohio App.3d 135, 145, 463 N.E.2d 636 (6th Dist. 1983) (citations omitted). Thus, "'[a]s a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter.'" Doe v. Archdiocese of Cincinnati, 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892 (2008) ¶7, quoting McAfferty v. Conover's Lessee, 7 Ohio St. 99, 105 (1857); accord State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn., 71 Ohio St.3d 26, 34, 641 N.E.2d 188

(1994) ("Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment."); In re Estate of Basmajian, 142 Ohio St. 483, 494, 52 N.E.2d 985 (1944) ("An estoppel arises where one is concerned in or does an act which in equity and good conscience will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position."); Russell v. Fourth Natl. Bank, 102 Ohio St. 248, 269–270, 131 N.E. 726 (1921) ("An estoppel arises when one is concerned in or does an act which in equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position.").

{¶ 22} "Implicit" in the definition of estoppel "is the principle that '[t]he purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.'" Doe v. Archdiocese of Cincinnati at ¶7, quoting Ohio State Bd. of Pharmacy v. Frantz, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990). The doctrine of estoppel "has been formulated primarily to prevent results contrary to good conscience and fair dealing." 42 Ohio Jurisprudence 3d, supra, Estoppel and Waiver, Section 2. Thus, "[w]hen properly applied, it operates upon the highest principles of morality and recommends itself to the common in a particular case * * *. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood or its equivalent in effect, and impose silence on the party only when in conscience and honesty he should not be allowed to speak." Id.

{¶ 23} The party asserting estoppel as a defense generally must establish four elements: "(1) a factual misrepresentation; (2) that is misleading; (3) that induced actual reliance, which

was both reasonable and in good faith; and (4) that caused detriment to the relying party."
Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, 156 Ohio App.3d 65, 2004-Ohio-411,
804 N.E.2d 979 (4th Dist.), ¶50; Machnics v. Sloe, 11th Dist. Geauga No. 2004-G-2554,
2005-Ohio-935, ¶68 (stating that "[t]he party raising the defense bears the burden of
demonstrating its applicability"). In First Federal Sav., 11 Ohio App.3d at 145, the court
explained these four elements as follows:

"First, there must be something in the nature of a representation by words,
acts, or silence. The representation must be factual, not promissory, or else the
elements and analysis appropriate to a promissory estoppel context may apply.
The facts underlying the representation must be known to the party at the time he
makes it, or at least the circumstances must be such that he is necessarily
chargeable with knowledge of them. In addition, if silence is involved, it
amounts to a representation only if the circumstances were such that the law
recognized a duty to speak. Second, the representation must communicate some
fact or state of affairs in a misleading way. Third, the representation must induce
actual reliance by the second party, and such reliance must be reasonable under
the circumstances and made in good faith. Fourth, the relying party would suffer
prejudice or pecuniary disadvantage if the party whose representation was relied
upon were not estopped or precluded from asserting an otherwise valid right in
contradiction to his earlier representation."

{¶ 24} Moreover, when determining whether the estoppel doctrine applies, a court must
consider "the principle that '[t]he purpose of equitable estoppel is to prevent actual or

constructive fraud and to promote the ends of justice.'" <u>Doe v. Archdiocese of Cincinnati</u>, <u>supra</u>. For this reason, "[n]o single formulation of the equitable doctrine of estoppel is applicable to every case, and in applying estoppel, each case must be considered on its own facts." <u>First Federal Sav.</u>, 11 Ohio App.3d at 144; <u>accord</u> <u>Egan v. National Distillers & Chemical Corp.</u>, 25 Ohio St.3d 176, 179, 495 N.E.2d 904 (1986).

{¶ 25} In the case at bar, we do not believe that appellant established the absence of a material fact as to whether appellee is estopped from seeking the unpaid tuition. Prohibiting appellee from collecting the unpaid tuition would not "prevent actual or constructive fraud" or "promote the ends of justice." Doe at 7. Indeed, permitting appellant to retain the benefits of his degree without fully paying for it would directly contravene the ends of justice. <u>RWS Building Co. V. Freeman</u>, 4th Dist. Lawrence No. 04CA40, 2005-Ohio-6665, ¶19, quoting <u>Buydden v. Mitchell</u>, 102 N.E.2d 21, 60 Ohio Law Abs. 493 (1915) (stating that "'a party cannot be permitted to retain the benefits of a contract and at the same time repudiate it or reject its burdens'"). Because appellant cannot show that the ends of justice would be promoted by prohibiting appellee from recovering the unpaid tuition, he cannot establish that, as a matter of law, appellee is estopped from seeking the unpaid tuition from him.

{¶ 26} Furthermore, because appellant cannot establish that applying the estoppel doctrine would prevent fraud or promote the ends of justice, whether he suffered a detriment as a result of appellee's conduct is a moot question. Thus, we need not address it. See App.R. 12(A)(1)(c).

2

WAIVER

{¶ 27} Appellant also argues that appellee waived its right to seek tuition from him. Appellant contends that appellee's conduct in conferring his degree, when appellant had not fully satisfied all financial obligations, constituted an implied waiver of the contract provision that states: "The College will not issue transcripts or confer the student's degree until the student satisfies all financial obligations to the college." He further argues that appellee's inconsistent conduct demonstrates that the doctrine of waiver by estoppel applies.

{¶ 28} "'A waiver is a voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform.'" White Co. v. Canton Transp. Co., 131 Ohio St. 190, 198, 2 N.E.2d 501 (1936), quoting List & Son Co. v. Chase, 80 Ohio St. 42, 49, 88 N.E. 120, 17 Ann.Cas. 61. Thus, a waiver must be "intentional, with knowledge of the facts and of the party's rights." List, 80 Ohio St. at 51. Alternatively, a waiver may be "implied from conduct that amounts to estoppel." Id.

{¶ 29} Conduct amounts to a "waiver by estoppel" "when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." Mark–It Place Foods, at ¶57. "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." National City Bank v. Rini, 162 Ohio App.3d 662, 2005-Ohio-4041, 834 N.E.2d 836, ¶24 (11th Dist.).

{¶ 30} In the case sub judice, we do not believe that appellant established the absence of a material fact regarding whether appellee waived its right to seek the unpaid tuition from

appellant.   Appellant asserts that by issuing his diploma, appellee voluntarily relinquished its right to hold appellant responsible for his outstanding financial obligations.   Appellant points to the student catalog provision that states: "The College will not issue transcripts or confer the student's degree until the student satisfies all financial obligations to the College."   Appellant thus contends that by conferring his degree, appellee indicated and agreed that appellant had no further financial obligations.

{¶ 31}  In the case sub judice, we believe that appellant's waiver argument relies upon a misinterpretation of the contract provision that "[t]he College will not issue transcripts or confer the student's degree until the student satisfies all financial obligations to the College."   We do not agree that appellee's conduct in conferring appellant's degree, despite knowing that the Department of Education had rejected his mother's PLUS loan application, constituted an intentional relinquishment of its right to seek unpaid tuition from appellant.   The provision in the student catalog does not state that conferring a degree relieves the student of all financial obligations.   The provision does not state that if appellee confers a student's degree, then the student necessarily fulfilled all financial obligations.   The provision states that the college will not confer a degree unless the student has fulfilled all financial obligations.   The provision does not absolutely prohibit the college from conferring a degree when a student has outstanding financial obligations.   In short, the provision does not mean that if the college confers a degree, then the student necessarily fulfilled all financial obligations.   Circumstances may arise, like in the case sub judice, when the college may confer a degree, but be mistaken as to whether all financial obligations have been fulfilled.   Conferring a degree does not indicate that the college waives its right to seek unpaid financial obligations, or that it promises not to pursue a student

for outstanding financial obligations.

{¶ 32} At the time appellee conferred appellant's degree, SFS knew that the Department of Education had rejected Laura's PLUS loan application. SFS continued to ask Laura to complete a new PLUS loan application up to and beyond appellant's graduation. Thus, when appellant received his degree, appellee apparently believed that Laura would ultimately complete a PLUS loan application so that it would receive the funds to satisfy appellant's remaining financial obligation. After Laura failed numerous times to respond to appellee's requests, appellee decided to reverse the credit it had placed in appellant's student account for the PLUS loan proceeds that appellee had expected to receive. Appellee's conduct in requesting Laura to complete a new PLUS loan application shows that it did not intend to relinquish its right to payment. While appellee's conduct may demonstrate poor business practice, it does not constitute a waiver of its right to seek monies due for appellant's unpaid tuition.

{¶ 33} Appellant also fails to show that a genuine issue of material fact remains regarding whether appellee's conduct constitutes a waiver by estoppel. As we explained above, conferring appellant's degree is not necessarily inconsistent with appellee's current position that appellant has outstanding financial obligations. The student catalog provision does not state that a student is necessarily relieved of any further financial obligations once appellee confers the degree. Thus, conferring a student's degree is not necessarily inconsistent with a claim that the student has outstanding financial obligations.

C

UNJUST ENRICHMENT

{¶ 34} Appellant additionally asserts that the trial court improperly awarded appellee

summary judgment because appellee failed to establish the absence of a genuine issue of material fact regarding its unjust enrichment claim.

{¶ 35} We observe, however, that appellant failed to raise this specific argument during the summary judgment proceedings. "[F]ailure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). In the case sub judice, at no point during the trial court proceedings did appellant assert that appellee failed to prove the elements of its claim. Instead, appellant relied solely upon the affirmative defenses of estoppel and waiver when it sought summary judgment and when it defended against appellee's summary judgment motion. Therefore, because appellant did not raise an unjust enrichment argument during the trial court proceedings, he has waived the right to raise it on appeal.

{¶ 36} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's four assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**[Cite as *Marietta College v. Valiante*, 2013-Ohio-5405.]**
JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

**<u>NOTICE TO COUNSEL</u>**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.