BELL ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* LE-GE, INC. ET AL., APPELLEES AND CROSS-APPELLANTS.■

(No. 48497—Decided February 4, 1985.)

*Sampliner & Sampliner* and *Fred B. Sampliner,* for appellants and cross-appellees.

*William Fadel* and *Richard H. Verheij,* for appellees and cross-appellants.

MARKUS, J. The buyers of unregistered corporate stock brought this action against the two issuing corporations and their corporate officers and directors to rescind the purchase. The corporation and its officials counterclaimed that the purchasers later tortiously interfered with the officials' efforts to sell one of the two companies to another purchaser. Following a bench trial, the trial court dismissed the claim and the counterclaim. Both sides appeal.

We affirm the trial court's dismissal of the counterclaim for plaintiffs' allegedly tortious interference with the defendants' business relations. However, the Supreme Court's decision in *Pencheff* v. *Adams* (1983), 5 Ohio St. 3d 153, requires us to reverse the denial of the buyers' claim for rescission.

The defendant corporations operated two ice cream franchise stores.

After negotiations with the defendant officials, the plaintiffs paid the defendant corporations a total of $25,200 for eighteen shares of each corporation. Neither corporation had filed a registration statement for its shares with the Ohio Division of Securities. Ohio law did not exempt the shares of these corporations from registration. R.C. 1707.02. Neither corporation filed an application to exempt these transactions from the registration laws pursuant to R.C. 1707.03.

The plaintiff buyers and the defendant officials had been social friends for approximately ten years. Before completing the purchase, the buyers discussed possible tax advantages from the transaction with the sellers' accountant. Although the buyers had sufficient time to obtain further consultation with their own legal or accounting advisers, they made no independent investigation about the purchase.

After purchasing the shares, the buyers participated in some management activities at the stores, attended shareholder meetings, and had an opportunity to examine all corporate records. The stores began to suffer financial losses approximately one year after the buyers purchased their shares. Roughly eighteen months after the purchase, road construction near one store decreased traffic and hampered business. Consequently, the companies' directors decided to sell one of the two stores.

During negotiations between the companies' directors and prospective purchasers for that store, one of the plaintiffs contacted the spokesman for the prospective new purchasers. That plaintiff told the prospective purchaser that the plaintiffs were unwilling to sell their interest, so the purchasers would have problems in completing their proposed deal. The prospective sellers then withdrew their pending offer, although they later made another offer to buy the

same store at a significantly reduced price.

Precisely two years after they purchased these corporate shares, the plaintiffs brought this action to rescind the transactions.

I

The plaintiffs-buyers failed to comply with App. R. 16(A) and Local App. R. 6, which direct the appellant to separately state and argue each assignment of error. In the interest of fairness, we will treat their listed issues as their assigned errors. Their first two issues challenge the trial court's denial of their claim for rescission.

As a general principle, R.C. 1707.07 requires the registration of any offer or sale of securities in this state. The corporate shares involved here are not securities which are exempted from that requirement by R.C. 1707.02. Therefore, all sales or offers to sell these corporate shares must be registered, unless the individual transactions are exempted by R.C. 1707.03. The sellers claim that R.C. 1707.03(O) would have exempted the sales to these buyers from registration, if the sellers had made a timely application. That section provides in relevant part:

"(O) The sale of any equity security is exempt if all the following conditions are satisfied:

"(1) The sale is by the issuer of the security;

"(2) The total number of purchasers in this state of all securities issued or sold by the issuer in reliance upon this exemption during the period of one year ending with the date of the sale does not exceed ten, provided that this exemption is limited to a total of twenty-five purchasers and that all such sales shall be made within five years after the date of incorporation * * *.

"(3) No advertisement, article, notice, or other communication published in any newspaper, magazine, or similar medium, or broadcast over television or radio is used in connection with the sale * * *.

"(4) The issuer reasonably believes after reasonable investigation that the purchaser is purchasing for investment.

"(5) The aggregate commission * * * does not exceed ten percent of the initial offering price.

"(6) Any such commission * * * is paid or given only to dealers or salesmen registered pursuant to Chapter 1707. of the Revised Code.

"(7) The issuer files with the division of securities not later than sixty days after the sale, a report of sale setting forth the name and address of the issuer, the total amount of the securities sold under this exemption, the number of persons to whom the securities were sold, the price at which the securities were sold, and the commissions or discounts paid or given.

"(8) The issuer pays a filing fee of twenty-five dollars.

"For the purposes of this division, each of the following is deemed to be a single purchaser of a security: husband and wife * * *."

The Division of Securities had implemented this transaction exemption procedure with its regulation. See Ohio Adm. Code 1301:6-3-03:

"(E) The issuer shall file with the division of securities a report of sales on form 3-O not later than sixty days after each sale of an equity security under division (O) of section 1707.03 of the Revised Code. All sales within such sixty-day period which have not been reported on a prior form 3-O may be included in such form 3-O."

R.C. 1707.44(C)(1) prohibits a sale of securities which are not exempt from registration, and which have not been registered, if the transaction itself is not exempt:

"No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale,

any security which comes under any of the following descriptions:

"(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject of one of the transactions exempted in sections 1707.03 * * *, has not been registered by description, coordination, or qualification and is not the subject matter of a transaction that has been registered by description."

R.C. 1707.43 gives a purchaser the right to rescind a sale of unregistered securities which are not exempt from registration and for which the individual transaction was not exempt:

"Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser * * * for the full amount paid by such purchaser * * *, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

"No action for the recovery of the purchase price as provided in this section * * * shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, * * *.

"No purchaser is entitled to the benefit of this section who has failed to accept, within thirty days from the date of such offer, an offer in writing made after two weeks from the date of such sale or contract of sale, by the seller or by any person who has participated in or aided the seller in any way in making such sale or contract of sale, to take back the security in question and to refund the full amount paid by such purchaser."

In this case, the trial court found that the sales of these corporate shares were eligible for exemption under R.C. 1707.03(O). The court noted that the securities division's receipt of the exemption application does not indicate the division's approval of the securities or the sale terms. Therefore, the court concluded that no protection results from an application to exempt the transaction. The evidence showed that the sellers relied on the companies' accountant to file the necessary documents with the securities division. The court decided:

"The plaintiffs have not shown by a preponderance of the evidence that the failure of the defendants to exempt their stock from registration denied them any protection contemplated by that violated statute."

Applying R.C. 1707.43, the Supreme Court upheld a buyer's rescission claim when the seller's application to exempt the transaction mistakenly described the corporation as the seller. *Bronaugh* v. *R. & E. Dredging Co.* (1968), 16 Ohio St. 2d 35 [45 O.O.2d 262]. The court ruled in *Bronaugh* that the transaction did not qualify for an exemption under R.C. 1707.03(B). The buyer could obtain rescission even though the seller acted in good faith and the buyer failed to show any loss attributable to the lack of registration. Paragraph one of the syllabus in *Bronaugh* holds:

"Under Section 1707.43, Revised Code, the purchaser of a security sold in violation of any provision in Chapter 1707, Revised Code (Ohio Securities Act), is entitled to restitution of the purchase price unless the violation is of such a trivial nature as not to materially affect the protection contemplated by the violated provision."

More recently, the Supreme Court further clarified the buyer's right to rescind a sale which violated the securities laws. *Pencheff* v. *Adams, supra.* The syllabus in *Pencheff* controls this case:

"Failure to comply with R.C. 1707.44(C)(1) materially affects the pro-

tection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under R.C. 1707.43."

The opinion in *Pencheff* recites that the buyer was aware of the seller's non-compliance with R.C. Chapter 1707 at the time of the sale. Further, the seller did register the stock with the securities division less than four months after the sale. Nevertheless, the court held that the violation materially affected the protection contemplated by R.C. 1707.44 (C)(1) "as a matter of law."

Thus, violation of R.C. 1707.44(C)(1) justifies rescission of the resulting sale pursuant to R.C. 1707.43, even though the securities were potentially eligible for registration. Correspondingly, violation of R.C. 1707.44(C)(1) justifies such rescission, even though the transaction was potentially eligible for exemption. In effect, the Supreme Court has ruled that all sales without actual registration or exemption "materially affect the protection contemplated by the violated provision."

This limited form of strict liability construes R.C. 1707.43 as permitting rescission of such unlawful sales regardless of the buyer's reason to request that remedy. The Supreme Court focused on the significance of "protection contemplated" by the statutory requirement, rather than the protection actually denied to the rescinding buyer.

Manifestly, there are many violations of R.C. Chapter 1707 which have trivial significance to the regulatory protection afforded by the securities division. The complete failure to register non-exempt securities and the complete failure to request transaction exemptions strike at the heart of this regulatory mechanism. R.C. 1707.43 creates an additional strong incentive for securities' sellers to comply with the registration laws. Sellers cannot successfully evade these laws by retrospective proof that they could have satisfied the regulatory rules if they had chosen to do so. A requirement that sellers claim transaction exemptions within sixty days after a sale facilitates confirmation or contradiction of the asserted facts by any interested parties.

The law protects the "good faith" violator by permitting him to terminate the buyer's rescission rights with a tender of rescission for two weeks. It restricts the buyer's statutory rescission claim to two years after the buyer has reason to know that the sale violated the securities laws. These sellers failed to determine that no exemption had been claimed and failed to tender a rescission for two full years. These buyers asserted their claim within the time allowed by R.C. 1707.43.

Hence, the buyers were entitled to rescind as a matter of law. Consequently, we reverse the trial court's judgment denying that remedy and remand for its accomplishment.

## II

The buyers' third contention challenges the trial court's failure to enforce discovery with appropriate orders and sanctions. The buyers requested that the sellers show cause why they should not be held in contempt for not answering the buyer's interrogatories. The court never ruled on that motion. After filing their motions, the buyers made no further complaint about the course of discovery. In their appellate briefs, the buyers do not explain which interrogatories were significant or how they suffered any prejudice from the court's inaction.

The buyers failed to move for an order to compel discovery under Civ. R. 37(A) as a predicate for their motion for sanctions under Civ. R. 37(B). If they had done so, the trial court would still have some discretion in regulating discovery abuses. Cf. *State, ex rel. Daggett,* v. *Gessaman* (1973), 34 Ohio St. 2d

55 [63 O.O.2d 88], paragraph one of the syllabus.

The buyers have not demonstrated that the court abused its discretion, even if we treat its failure to rule as a denial of their motion. Further, the buyers have shown no prejudice from the discovery proceedings in light of our decision about their right to rescind.

## III

For their cross-appeal, the defendants-sellers dispute the trial court's rejection of their counterclaim for tortious interference with their sale to another prospective purchaser. That prospective purchaser said his group negotiated with these defendants to buy the assets at one of the ice cream stores. After making an offer, he received a call from one of these plaintiffs:

"I cannot remember exactly the words that she told me, but she said that [the plaintiffs] didn't want to sell the place. And again I can't remember the exact words, but there would maybe, would be problems to that effect. I can't remember exact words.

"And it did frighten me as far as buying the place. I did not want to get in any legal entanglement."

The trial court found that the defendants had not shown any tortious interference with their potential sales contract. The plaintiffs could not be liable for tortious interference with a business relationship by a communication they were privileged to make. See 4 Restatement of the Law 2d, Torts (1979), Section 773; *Reichman* v. *Drake* (1951), 89 Ohio App. 222, 226-227 [45 O.O. 444]; *Pearse* v. *McDonald's* (1975), 47 Ohio App. 2d 20, 22-23 [1 O.O.3d 164].

Plaintiffs had a privilege to discourage the prospective contract which they believed in good faith would impair their own legally protected interests. They could properly do so by asserting or threatening to protect properly their lawful interests. See Restatement of Torts 2d, *supra,* at Sections 767, 769

and 773; *Pearse* v. *McDonald's, supra; Donald G. Culp Co.* v. *Reliable Stores Corp.* (1983), 14 Ohio App. 3d 161, 163-164; *Paramount Supply Co.* v. *Sherlin Corp.* (1984), 16 Ohio App. 3d 176.

In this case, the plaintiff who spoke to the prospective purchaser merely asserted her own property interest in the store. As shareholders in the corporation which owned the store, plaintiffs had a lawful interest in the potential transaction. They had an apparent belief that the proposed transaction would impair the value of their stock. The trial court had ample basis to rule against the counterclaim, since defendants failed to show that plaintiffs acted beyond their privilege by the reported communication.

The single error assigned by the defendants-sellers is overruled, and the judgment denying their counterclaim is affirmed.

*Judgment affirmed in part, reversed in part and cause remanded.*

JACKSON and ANN MCMANAMON, JJ., concur.