[Cite as *Fling v. Daniel*, 2019-Ohio-1723.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| WILLIAM E. FLING, | : | Case No. 18CA18 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| JANET DANIEL, | : | |
| Defendant-Appellee. | : | **RELEASED: 04/22/2019** |

_____
APPEARANCES:

Andrew P. George, Esq., Lebanon, Ohio, for appellant.

Fred J. Beery, Esq., Hillsboro, Ohio, for appellee.
_____
Hess, J.

{¶1} William Fling ("Fling") and Janet Daniel ("Daniel") are first cousins who own adjoining properties formerly owned by their now deceased parents. Fling appeals from the trial court's judgment in favor of Daniel in an action seeking a declaratory judgment that he has an easement for use of a spring and related water supply system on her property and an injunction prohibiting her from restricting his access to the water. Fling maintains that the trial court erred when it found that he does not have a prescriptive easement, that Ohio does not recognize easements by estoppel, and if it does, he does not have an easement by estoppel. However, the trial court's determination that Fling failed to establish the adversity element for a prescriptive easement is not against the manifest weight of the evidence because the evidence shows his parents' use of the water supply system was permissive. And although we conclude that Ohio recognizes easements by estoppel, the trial court's determination

that Fling failed to establish such an easement is not against the manifest weight of the evidence because the evidence does not show that Fling's parents contributed to the installation and maintenance of the system in reliance on a purported easement. Accordingly, we affirm the trial court's judgment.

## I. FACTS

{¶2} Fling's parents, William Fling ("William Sr.") and Juel Fling ("Juel"), formerly owned what we will refer to as the "Fling Property." Daniel's father, Albert Fling ("Albert"), was the brother of William Sr. and formerly owned what we will refer to as the "Daniel Property." Before 1962, water on the Fling Property came from a pond, a cistern, and purchase. In 1962, the brothers decided to develop a spring on the Daniel Property. They installed a collection tank, water line, and electric pump on the Daniel Property and split the water line so one line ran to the Fling Property and another to the Daniel Property. The spring supplied water for both properties, which contained residences, farm buildings, and livestock operations. During their lifetime, the brothers performed repairs on the water supply system but had no written agreement regarding the spring or system.

{¶3} Albert died, and Daniel and her sisters obtained title to the Daniel Property. In August 2000, William Sr., Juel, and Daniel executed an "Agreement/Contract for Water Supply" prepared by Juel. They agreed that "a water supply" on the Daniel Property currently provided water to both properties, that it would be used "only for residential purposes," that the "[w]ater lines, etc." from "the source to the split" would be maintained and repaired "50/50 by the owners," and that the lines to each residence would be "repaired and maintained 100% by each property owner." The

agreement stated it would be in effect "as long as either" William Sr. or Juel "resides at" the Fling Property.  In 2005, William Sr. died.  In 2016, Juel died.

{¶4}   Fling does not live on the Fling Property but has rented out the house on it.  He has operated an event barn on the property and currently operates a veterinary clinic there. Fling wanted to perform maintenance on the water supply system and improve it; however, he wanted to formalize his rights to the water supply before making these investments.  In 2017, he had an attorney prepare a proposed waterline easement, which angered Daniel's husband and caused him to have the water line to the Fling Property cut and capped.  Fling ran a water line to the Fling Property from other property he owns but wants to sell and estimated it would cost $35,000 to $40,000 to install a direct line from the county water supply to the Fling Property.

{¶5}   Fling filed a complaint seeking a declaratory judgment that he has an implied, prescriptive, equitable, or other easement regarding the spring, reformation of deeds to include the easement, and an injunction to prohibit Daniel from restricting his water access.   After a trial, the court held that Fling "has not proven by clear and convincing evidence that there is an easement for use of the water supply from the spring * * * and he is therefore not entitled to injunctive [relief] or to declaratory judgment on any of his claims."  It found Fling did not have an implied easement because the parties' properties were not united in ownership prior to the construction of the water lines.  It also held that Fling did not have a prescriptive easement because his parents' use of the spring was not exclusive and was permissive rather than adverse.  The trial court noted the facts were "somewhat analogous" to those in *Yeager v. Tuning*, 79 Ohio

St. 121, 86 N.E. 657 (1908), and held that William and Albert had a "parol agreement" which was a "revocable license."

{¶6}   The trial court also found "the Ohio Supreme Court has not recognized easements by estoppel."   It observed that in *Kallner v. Wells*, 4th Dist. Scioto No. 05CA3030, 2006-Ohio-4634, we noted that *Yeager* rejected easement by estoppel when a licensee made valuable improvements on land and has not been overruled. The trial court determined *Yeager* "remains the law of this state."   However, it noted "there are a number of appellate courts including the Fourth District that have allowed the argument of easement by estoppel despite the holding in *Yeager*."   But "[e]ven if there is a cause of action of easement by estoppel in this state," Fling "did not prove the elements" because "there is no evidence that [his] parents expended money on the water system in reliance upon their belief that there was an easement."   Rather "this was joint use by family members by agreement and at mutual expense."   Thus, the trial court granted judgment in favor of Daniel.

## II.  ASSIGNMENT OF ERROR

{¶7}   Fling assigns the following error for our review:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO FIND AN EASEMENT BY ESTOPPEL OR OTHER IMPLIED EASEMENT EXISTED IN FAVOR OF PLAINTIFF/APPELLANT.

## III.  Prescriptive Easement

{¶8}   In the sole assignment of error, Fling asserts in part that the trial court erred when it found that he failed to prove a prescriptive easement.

{¶9}   "The basic definition of an easement is that it is the grant of a use on the land of another."   *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231, 239 N.E.2d 22 (1968).

"The required elements of a prescriptive easement are similar to those in the law of adverse possession." *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 77. " 'Ordinarily a party seeking a prescriptive easement "must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period." ' " *Pinkerton v. Salyers*, 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶ 23, quoting *Queen v. Hanna*, 2012-Ohio-6291, 985 N.E.2d 929, ¶ 37 (4th Dist.), quoting *Dunn* at ¶ 77. We have explained:

> In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). * * * When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. * * * "Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate." *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 9 (12th Dist.) * * *. We will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment.

*Id.* at ¶ 18.

{¶10} Exclusive use is not required to prevail on a prescriptive easement claim. "Unlike a claim for adverse possession, a claim for a prescriptive easement does not require proof of exclusive possession of the property." *Gulas v. Tirone*, 184 Ohio App.3d 143, 2009-Ohio-5076, 919 N.E.2d 833, ¶ 24 (7th Dist.). However, Fling is required to show that the use was adverse, which is an essential element for a prescriptive easement. *See Pinkerton* at ¶ 23.

**{¶11}** Fling does not dispute that the establishment and use of the water supply system was permissive and admits that generally permissive uses cannot ripen into prescriptive rights. *See Burchfield v. Wolfe*, 4th Dist. Hocking No. 00CA11, 2001 WL 978865, *5 (Aug.1, 2001). However, he asserts the use occurred under a "claim of right" which gave rise to a prescriptive easement. He claims that *Shanks v. Floom*, 162 Ohio St. 479, 124 N.E.2d 416 (1955) "determined that in the event neighboring property owners each expend resources to create a mutually beneficial structure, there is created a presumption in favor of an easement" and that *Shanks* "obviates the need for a review of whether or not the original use" was adverse or permissive.

**{¶12}** In *Shanks*, adjacent landowners orally agreed to construct a common cement driveway on their properties. *Id.* at 479. They split the cost of the driveway and used it for over 21 years. *Id.* A dispute arose between their successors in title, resulting in a lawsuit for quiet title and injunctive relief. *Id.* at 480. The trial court denied the injunction and concluded the parties each had a right to use the driveway. *Id.* The appellate court held both properties were subject to a prescriptive easement for driveway purposes. *Id.* In affirming, the Supreme Court of Ohio explained that it " 'has been held in many cases' " that a use is adverse or hostile if it is " 'inconsistent with the rights of the title owner and not subordinate or subservient thereto. Hostile use is sometimes described as possession and use under a claim of right.' " *Id.* at 482, quoting *Kimball v. Anderson*, 125 Ohio St. 241, 244, 181 N.E. 17 (1932). The court stated:

> We believe it is unreasonable to assume that the owners of these properties, at the time this driveway was constructed and the use thereof began, each felt that he was using his half as a matter of right and the other's half merely by permission. On the contrary, the nature and

permanence of the improvement, that it was constructed of concrete, and that it was constructed on what the owners considered to be the boundary line between their properties are more consistent with a claim of right on the part of each than with a day-to-day permissive use. We hold therefore, that the use in this case was under a claim of right and as such was adverse and not permissive.

*Id.* at 484. It further held:

Where owners of adjacent lots, pursuant to an oral agreement, construct a common cement driveway, substantially one-half of which is on the land of each, and each pays one-half of the cost thereof, the use by each owner of the land of the other is under a claim of right and as such is adverse, each to the other, and after 21 years each owner thereby acquires by prescription an easement over the land of the other.

*Id.* at syllabus.

**{¶13}** Fling's reliance on *Shanks* is misplaced. *Shanks* does not stand for the proposition that a prescriptive easement is presumed when neighboring property owners expend resources on a mutually beneficial structure and that adversity need not be proven. Rather, it explains that use under a claim of right satisfies the adversity element of a prescriptive easement, and it held that a claim of right existed under specific factual circumstances not present here. In *Shanks*, the landowners dedicated a substantially equal amount of land and money to a common use. But here, Fling's parents did not dedicate any of their land to a common use. They used the water supply with Albert's permission and not under a claim of right.

**{¶14}** The trial court's finding that Fling did not establish a prescriptive easement by clear and convincing evidence is not against the manifest weight of the evidence. We overrule the first assignment of error to the extent it asserts otherwise.

IV.  Easement by Estoppel

A.  Whether Ohio Recognizes Easements by Estoppel

{¶15} In the first assignment of error, Fling also claims that the trial court erroneously held that easements by estoppel do not exist in Ohio.  Fling maintains that the trial court's reliance on *Yeager* and *Kallner* is misplaced.  He argues that *Renner v. Johnson*, 2 Ohio St.2d 195, 207 N.E.24 751 (1965), "clearly affirms the existence of easements by estoppel and expanded Ohio's approach to same far beyond" *Yeager*, and he notes that *Roubanes v. Brown*, 5th Dist. Holmes No. 11CA019, 2012-Ohio-1933, "espouses this analysis."

{¶16} The trial court did not explicitly hold that Ohio does not recognize easements by estoppel, but it did express uncertainty on the matter.  Whether the doctrine of easement by estoppel exists in Ohio is a question of law we review de novo. *Roubanes* at ¶ 14-15.  In general, " '[e]quitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.' " *Doe v. Archdiocese of Cincinnati*, 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994). "Equitable estoppel usually requires actual or constructive fraud." *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 28.  "[E]quitable estoppel must be determined on the particular facts of each case." *In re Election of Nov. 6, 1990 for Office of Atty. Gen. of Ohio*, 58 Ohio St.3d 103, 113, 569 N.E.2d 447 (1991).

{¶17} In *Yeager*, the plaintiffs averred in a petition that they had an oral agreement with the defendants to construct a telephone line "over and across their respective lands and to their residences." *Yeager*, 79 Ohio St. at 121, 86 N.E. 657. They agreed to erect and maintain poles at their own expense and agreed to equally contribute to the purchase and installation of wires and to line maintenance and repairs. *Id.* After they used the line for about three years, the defendants cut the wires and removed some of the poles, rendering the line useless in places. *Id.* The plaintiffs filed a petition seeking an order requiring the defendants to replace the poles and restore the line and an injunction prohibiting future interference with the line. *Id.* The circuit court sustained a demurrer to the petition and dismissed it. *Id.*

{¶18} In affirming, the Supreme Court stated that "[a]n easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former," and "[a] license is a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein." *Id.* at 124. It also stated:

> "At common law a parol license to be exercised upon the land of another creates an interest in the land, is within the statute of frauds, and may be revoked by the licensor at any time, no matter whether or not the licensee has exercised acts under the license, or expended money in reliance thereon. In many of the states this rule prevails, while in others the licensor is deemed to be equitably estopped from revoking the license, after allowing the licensee to perform acts thereunder, or to make expenditures in reliance thereon. These two lines of cases cannot be reconciled; for one of them holds that an interest in land cannot be created by force of a mere parol license, whether executed or not, while the other declares that where the licensee has gone to expense, relying upon the license, the licensor may be estopped from revoking it, and thus an easement may be created. The former line of cases, it seems to us, is founded upon the better reason. They decide that a parol license to do an

act on the land of the licensor, while it justifies anything done by the licensee before revocation, is revocable, at the option of the licensor, and *this although the intention was to confer a continuing right, and money has been expended by the licensee upon the faith of the license. Such license cannot be changed into an equitable right on the ground of equitable estoppel.*"

(Emphasis added.)  *Id.* at 125-126, quoting 31 A.C. Freeman, *American State Reports* 715 (1893) (annotation to *Lawrence v. Springer*, 49 N.J.Eq. 289, 24 A. 933 (1892)). And since *Yeager*, the court has broadly stated that an easement "may be acquired only by grant, expressed or implied, or by prescription."  *Trattar v. Rausch*, 154 Ohio St. 286, 95 N.E.2d 685 (1950), paragraph two of the syllabus.

{¶19}  In *Renner*, the owner of two parcels established water and sewer lines on the properties before selling them.  *Renner*, 2 Ohio St.2d at 196, 207 N.E.2d 751. Later, the plaintiffs and defendants each acquired one of the parcels.  *Id.*  The plaintiffs filed suit to enjoin the defendants from shutting off the lines running from the plaintiffs' property across the defendants' property to public water and sewer lines.  *Id.*  The trial court granted an easement, and the appellate court affirmed.  *Id.* at 197.

{¶20}  The Supreme Court of Ohio reversed.  *Id.* at 199.  It explained:

Where an owner of two parcels of land subjects one of them to an easement in favor of the other and where such owner sells the dominant parcel without providing for that easement in his grant and where the enjoyment of such easement is reasonably necessary to the beneficial enjoyment of the parcel granted, the grant of such an easement may be implied.

*Id.* at paragraph one of the syllabus.  However, the "equitable right of the grantee of the dominant parcel to reform the grant to provide for such easement * * * is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of such

easement." *Id.* at paragraphs two and three of the syllabus. Because the defendants were such purchasers, the court held the plaintiffs had no right against them. *Id.* at 197.

**{¶21}** *Renner* addresses easements by implied grant when there has been a severance of unity of ownership in an estate; it does not overrule *Yeager* or explicitly or implicitly permit easements by estoppel. *Contra Roubanes*, 2012-Ohio-1933, at ¶ 17 (finding *Renner* "permits an easement by estoppel"). Nonetheless, we do not construe *Yeager* as a general prohibition against easements by estoppel. It only prohibits conversion of a license into an easement by estoppel based on an intent to confer a continuing right and expenditures in reliance on the license. *Yeager*, 79 Ohio St. at 125-126, 86 N.E. 657. And while our research has not revealed any cases in which the Supreme Court of Ohio has explicitly or implicitly recognized easements by estoppel, it has also not revealed any cases in which that court declined to recognize such an easement despite the presence of actual or constructive fraud.

**{¶22}** Our decision in *Kallner* also does not prohibit easements by estoppel. There, the defendant had an express easement for ingress and egress over a tract of farmland to access his landlocked property. *Kallner*, 2006-Ohio-4634, at ¶ 5. With assistance from of one of the owners, he planted trees along the easement—a permanent improvement that went beyond the scope of the express easement. *Id.* at ¶ 6, 15. After the plaintiffs obtained title to the farm, they filed suit seeking to quiet title to the tract. *Id.* at ¶ 3, 7. The trial court awarded the defendant title by adverse possession. *Id.* at ¶ 1. We reversed because the defendant failed to prove his use of the tract was adverse. *Id.* at ¶ 19. We also stated:

> We are tempted to construe the trial court's decision to grant [the defendant] the disputed property by adverse possession as an easement

created by estoppel.  However, in light of the [plaintiffs'] citation to *Yeager v. Tuning* (1908), 79 Ohio St. 121, 86 N.E. 657, which has not been overruled expressly or by implication, we decline to do so in this instance.  The court characterized the oral grant of permission to use another's land as a license, which is revocable.  The Supreme Court has gone further to expressly reject easement by estoppel, even in the context of the land owner's acquiescence to the making of valuable improvement and the erection of structures upon the land by the "licensee."  *See Fowler v. Delaplain* (1909), 79 Ohio St. 279, 87 N.E. 260, syllabus 2.

*Id.* at ¶ 20.  We did not hold that easements by estoppel do not exist Ohio.  Rather, we declined to find one under the circumstances because the plaintiff had a license to plant the trees, which pursuant to *Yeager*, could not be converted into an easement by estoppel.  *See id.*

{¶23}  This court and other Ohio appellate courts have recognized easements by estoppel.  *See Pinkerton*, 2015-Ohio-377, at ¶ 32-33; *Northwest Ohio Properties, Ltd. v. County of Lucas*, 6th Dist. Lucas No. L-17-1190, 2018-Ohio-4239, ¶ 37-42; *Von Stein v. Phenicie*, 3d Dist. Crawford No. 3-13-18, 2014-Ohio-4872, ¶ 74-77 (recognizing easements by estoppel but declining to find one under the circumstances); *Byham v. Pierce*, 2d Dist. Montgomery No. 13206, 1992 WL 127714, *2-3 (June 9, 1992).  We have stated: "A landowner cannot remain silent and permit another to spend money *in reliance on a purported easement*, when in justice and equity the landowner should have asserted his conflicting rights.  If he fails to object, under these circumstances the landowner is estopped to deny the easement."  (Emphasis added.)  *Pinkerton* at ¶ 32. This standard is consistent with *Yeager*, *Kallner*, and the purpose of equitable estoppel " 'to prevent actual or constructive fraud and to promote the ends of justice.' "  *Doe*, 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, at ¶ 7, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

**{¶24}** Accordingly, we hold that Ohio recognizes easements by estoppel.

### B. Whether an Easement by Estoppel was Established

**{¶25}** Next, Fling challenges the trial court's finding that he failed to establish an easement by estoppel. He asserts that William Sr. and Albert "split the bill for the water system," that "[c]arrying forth the original arrangements, both Fling and Daniel have paid for work on the water system over the years," and that Daniel should not be "permitted to benefit from expenditures by William Sr. and Fling made under the belief they had a right to the water supply."

**{¶26}** We set forth the standard for an easement by estoppel in Section IV.A. An easement by estoppel must be established by clear and convincing evidence, and we review whether the finding that Fling did not establish such an easement is against the manifest weight of the evidence. *See Pinkerton*, 2015-Ohio-377, at ¶ 17-18.

**{¶27}** Here, as the trial court indicated, there is no evidence Fling's parents expended resources on the water supply system under the belief that Albert had given them an easement as opposed to a license. The fact that after Albert's death, Fling's parents contracted for use of the water supply for the rest of the time they lived on the Fling Property suggests they believed Albert had given them a license which terminated on his death rather than an interest in the Daniel Property. *See McCoy v. Hines*, 4th Dist. Adams No. 518, 1992 WL 188480, *2 (July 28, 1992), quoting 36 Ohio Jurisprudence 3d, Easements and Licenses, Section 1, at 386 (1982) (" 'Unlike an easement, a license passes no property or interest in real property' " and " 'ceases with the death of either party' "). As in *Yeager*, the fact that the licensor intended to confer a continuing right and that the licensees expended money on the faith of the license does

not convert the license into an easement by estoppel.  *See Yeager*, 79 Ohio St. at 125-126, 86 N.E. 657.

**{¶28}**  Under these circumstances, we hold that the trial court's finding that Fling failed to establish an easement by estoppel is not against the manifest weight of the evidence.  We overrule the first assignment of error to the extent it asserts otherwise.

## V.  CONCLUSION

**{¶29}**  Having overruled the sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Smith, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**