[Cite as *Ponsart v. Arnold*, 2024-Ohio-640.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| MICHAEL PONSART, et al., | **CASE NO. 2023-G-0030** |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| CHERYL ARNOLD, et al., | |
| Defendants-Appellees. | Trial Court No. 2021 P 000668 |

**O P I N I O N**

Decided: February 20, 2024
Judgment: Affirmed

*Evan T. Byron*, Kaufman, Drozdowski & Grendell, LLC, 29525 Chagrin Boulevard, Suite 250, Pepper Pike, OH 44122 (For Plaintiffs-Appellants).

*Josephine L. Begin*, Manning & Clair, Attorneys at Law, 38040 Euclid Avenue, Willoughby, OH 44094 (For Defendants-Appellees).

JOHN J. EKLUND, J.

{¶1} Appellants, Michael and Sandra Ponsart (the Ponsarts) and Dave and Sharon Hathy (the Hathys), appeal the judgment of the Geauga County Court of Common Pleas granting summary judgment in favor of the appellees, Cheryl and Don Arnold and three companies the two jointly own: Heritage Hills RV Park, LLC, Thompson/Grand River Valley KOA, LLC, and Heritage Hills Campground, LLC. Appellants claimed that appellees violated the terms of seasonal contracts for the use of recreational campsites by disallowing the sale, transfer, or assignment of the rights to the remaining season's campsite as a package deal with campsite user's recreational vehicles currently on site.

Appellants alleged breach of contract and tortious interference with a business relationship.

{¶2} Appellants raise two assignments of error, arguing the trial court erred by granting summary judgment on their breach of contract claim and tortious interference with a business relationship claim.

{¶3} Having reviewed the record and the applicable caselaw, we find appellants' assignments of error are without merit. First, the campsite transfer policy was a nonassignable and unwritten revocable policy. Appellees did not commit a breach by changing the policy midseason. Second, appellees did not tortiously interfere with a business relationship because appellants failed to establish that any business relationship existed. Further, as owners of the campsite, appellees were privileged to limit the transfer, sale, or assignment of the rights to a campsite.

{¶4} Therefore, we affirm the judgment of the Geauga County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} Appellees owned a recreational campground in Geauga County. The campsite had three types of campers: overnight, monthly, and seasonal. Seasonal camp users paid for the entire camp season: May 1 through October 31. Seasonal camp users signed a campsite use agreement. The agreement provided:

> This agreement is not a lease. It is a contract which is binding on both the campground and the camper. This agreement is not a lease of real estate. The camper is not a tenant. This agreement is, for legal purposes, a license to use the property of the campground on the conditions which are stated in this agreement.

2

Seasonal camp users were given the opportunity to make a deposit and reserve the next year's site. Any lot not secured by a deposit could be opened to individuals on a waiting list. Cheryl Arnold testified that the waiting list had approximately 500 people on it. The Ponsarts and Hathys both became seasonal camp users in 2016. The Hathys began camping by purchasing an existing recreational vehicle (RV) on site.

{¶6}   In 2016, the campsite use agreement provided that RVs more than ten years old would not be accepted unless they were already located on a campsite. The campsite use agreement also provided that "**If your Motorhome or Travel Trailer is older than the requirement, it cannot be sold and left here at the park. Please discuss any pending sale with Don if the plans are to leave it at the park. We will need to meet the new owners and determine if they fit the neighborhood/park. We have a great group of people and want to keep it that way.**" (Bold in original.)

{¶7}   However, this language was removed from the campsite use agreement for the 2017 season onward. Additionally, in August 2018, appellees sent a letter to notify camp users that certain camp sites would no longer be used as seasonal sites. The notice stated:

> If you are planning to sell your camper in the future * * *. In the above sections, you will not be able to sell your lot and camper as a package deal. When you leave, your lot will no longer be a seasonal lot. Very important to keep in mind and if you have questions, please come ask. This DOES NOT affect current seasonals staying on these lots, just the selling of your lot and camper when you no longer want to be here.

After receiving this letter, the Hathys chose to move their campsite from one of the affected sites. Cheryl testified the reason for this change was to afford easier in and out access to day camp users and because seasonal camping is less profitable.

3

**{¶8}** For the 2020 season, the pertinent year for this lawsuit, the RV age limitation provision made no reference to leaving the RV at the site as a condition of the sale. In September 2020, appellees sent a notice to formally end the policy of allowing people to assume a seasonal site and priority for reserving their site in the following year when a campsite user sold their RV. That notice read:

> Addendum to contract: Due to the high demand and extremely long wait list, we have decided to no longer allow the selling of your camper with the lot. We feel as though this is unfair to the people who we are placing on the list, who already have campers, and want a seasonal spot. If we have the information regarding selling your camper prior to the packets being sent out on 9/20/2020, you will be allowed to continue with the sale.

**{¶9}** Neither the Ponsarts nor the Hathys had placed their RVs on sale by this point. However, appellants maintain that due to the long waitlist, "had they listed their campers/sites for sale * * * it is a virtual certainty that * * * both would have had multiple offers." (Brief in Opp. to MSJ, pp. 17-18.).

**{¶10}** On November 5, 2021, appellants filed a complaint with counts for breach of contract, tortious interference with a business relationship, fraud, deceptive trade practices, and unjust enrichment.

**{¶11}** On May 2, 2023, appellees filed a motion for summary judgment. Appellants responded in opposition, and appellees filed a reply. At this time, appellants dismissed their fraud and deceptive trade practices claims.

**{¶12}** On July 27, 2023, the trial court issued an order granting appellees' motion for summary judgment. The trial court's order noted that the salient facts were not in dispute and concluded appellees ended their "unwritten policy allowing some seasonal sites to be sold by the respective licensees to applicants." The court determined appellants had not identified any "real or prospective buyers prior to the expiration of their

4

2020 Contracts" but claimed they would have sold ahead of time had they known about the policy change.

{¶13} The trial court concluded the campsite use agreement was a license to use the property and as such did not provide appellants "a right to sell or transfer their license to use any campsite. [Appellants] do not identify any language in the Contract to prove otherwise." The trial court noted that under R.C. 1335.05, the statute of frauds requires promises creating an interest in land to be in writing. However, the trial court determined that regardless of the statute of frauds, the breach of contract claim failed because there was "no need to perform (i.e., allow a transfer) in absence of a tentative sale during the [2020] contract term."

{¶14} The trial court further concluded that appellees had not tortiously interfered with a business relationship because appellants did "not even allege, much less prove, to have had any contracts or relationships with prospective purchasers during the pendency of any contract. [Appellants'] claim of a potential business relationship or contract is insufficient to prove the necessary element in support of their claim in this regard."

{¶15} Finally, the trial court concluded appellants' unjust enrichment claim could not be sustained on the basis of appellants' maintenance and beautification of their campsites.

{¶16} Appellants timely appealed raising two assignments of error. In this appeal, appellants have not contested the trial court's dismissal of their unjust enrichment claim.

5

Case No. 2023-G-0030

## Standard of Review

{¶17} We review a trial court's summary judgment ruling de novo. *Hapgood v. Conrad*, 11th Dist. Trumbull No. 2000-T-0058, 2002-Ohio-3363, ¶ 13, citing *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 715 N.E.2d 1179 (7th Dist.1998). "We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C)." *Allen v. 5125 Peno, LLC,* 2017-Ohio-8941, 101 N.E.3d 484 (11th Dist.), ¶ 6, citing *Brown v. Scioto Cty. Bd. of Commrs.,* 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶18} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and it is adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.,* 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). "The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

## Assignments of Error and Analysis

{¶19} Appellants' assignments of error state:

{¶20} "[1.] The trial court committed reversible error by granting Appellees' motion for summary judgment on Appellants' breach of contract claim."

6

Case No. 2023-G-0030

**{¶21}** "[2.] The trial court committed reversible error by granting Appellees' motion for summary judgment on Appellants' tortious interference claim."

**Breach of Contract:**

**{¶22}** "To establish a breach of contract claim, a party must demonstrate (1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Cafaro-Peachcreek Joint Venture Partnership v. Spanggard*, 11th Dist. Trumbull No. 2022-T-0004, 2022-Ohio-4468, ¶ 28, citing *Utz v. Stovall,* 11th Dist. Portage No. 2012-P-0135, 2013-Ohio-4299, ¶ 28.

**{¶23}** Appellants maintain that the threshold issue in this case is whether the campsite use agreements are licenses, leases, or some other legal document. Appellants contend that the campsite use agreement is a lease or, alternatively, an irrevocable hybrid license. Appellees counter that the distinction between whether the campsite use agreement was a license or a lease is immaterial because appellees terminated a policy that was not part of the 2020 campsite use agreement. As the campsite sale policy was not part of the written 2020 campsite use agreement, appellees contend that they could not have breached the contract, regardless of whether the campsite use agreement conferred a lease or a license.

**{¶24}** As the contract in question deals with a recreational campsite, this matter is governed by R.C. chapter 3729 concerning Recreational Vehicle Parks, Recreation Camps, Combined and Temporary Park-camps. R.C. 3729.12 provides: "Every campsite use agreement entered into between a camp operator and a campsite user shall be in

7

writing, shall contain the name, address, and phone number of the campsite user, and shall designate the campsite that is the subject of the agreement. The campsite use agreement also shall contain a description of the procedure for removing property from the campsite if the campsite user fails to remove all property from the campsite as required by section 3729.13 of the Revised Code." R.C. 3729.01(B) defines a "campsite user" as "a person who enters into a campsite use agreement with a camp operator for the use of a campsite at a recreational vehicle park, recreation camp, combined park-camp, or temporary park-camp."

{¶25} A license is "'a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interests in the land.'" *Varjaski v. Pearch*, 7th Dist. Mahoning No. 04 MA 235, 2006-Ohio-5268, ¶ 12, quoting *DePugh v. Mead Corp.*, 79 Ohio App.3d 503, 511, 607 N.E.2d 867 (4th Dist. 1992). A license grants "'an authority to do a particular act or series of acts upon another's land, without possessing any estate therein.'" *Mosher v. Cook United, Inc.*, 62 Ohio St.2d 316, 317, 405 N.E.2d 720 (1980), quoting *Rodefer v. Pittsburg, O.V. & C.R. Co.,* 72 Ohio St. 272, 281, 74 N.E. 183 (1905), citing *Wolfe v. Frost,* 4 Sanford's Chancery 72.

{¶26} "There are two types of licenses: revocable licenses which are mere privileges to do an act on the land of another and licenses coupled with interest which are generally irrevocable." *Varjaski, supra*, at ¶ 12, citing *Kamenar R.R. Salvage v. Ohio Edison Co.,* 79 Ohio App.3d 685, 691, 607 N.E.2d 1108 (3d Dist.1992). "If the parties intend the agreement to be permanent in nature, the license is said to be coupled with an interest." *Cambridge Village Condominium Assn. v. Cambridge Condominium Assn.,* 139

8

Ohio App.3d 328, 333, 743 N.E.2d 954 (11th Dist. 2000). "A license coupled with an interest becomes irrevocable, meaning that it is no longer terminable at the will of the licensor, and constitutes a right to do the act rather than a mere privilege to do it." *Id.* at 333-334, citing *Kamenar* at 691.

{¶27} First, the site transfer policy was not a term of the 2020 campsite use agreement. The language of the campsite use agreement was an agreement to use the land between May and October of a given year and each year the parties executed a new campsite use agreement. Further, neither party was obligated to renew the agreement in subsequent seasons.

{¶28} The unwritten site transfer policy and the past practices allowing such transfers do not bind appellees or create a contract right. The language of the agreement explicitly set forth that the "agreement is not a lease of real estate. The camper is not a tenant. This agreement is, for legal purposes, a license to use the property of the campground on the conditions which are stated in this agreement." Moreover, the statutory language contained in R.C. Chapter 3729 also supports the conclusion that campsite use agreements are licenses by referring to a person entering into a campsite use agreement as a "user." Thus, the campsite use agreements at issue here were licenses.

{¶29} Next, the licenses here were "nonassignable." *See Varjaski, supra,* at ¶ 12. R.C. 3729.12 mandates that a camp operator must maintain a written agreement containing the name, address, and phone number of the campsite user with all campsite users on a campsite. Appellants argue that they should have been entitled to sell their RVs along with the rights to the campsite itself to a third party. However, by law, the seller

9

of the RV cannot unilaterally sell the RV along with the rights to its site on a recreation park. The campsite user wishing to sell an RV on a seasonal campsite cannot execute a written agreement on behalf of the campsite operator, nor can the campsite user maintain the new campsite user's statutorily required contact information. In short, the campsite user has no ability to sell, transfer, or assign rights to a campsite without the involvement and participation of the campsite operator.

{¶30} Appellees' pre-2017 campsite use agreement reflected this when it requested that any sales of RVs to remain on the park must be discussed with appellees and given final approval. The sale of an RV along with the campsite was within the final discretion of appellees under both the written campsite use agreement and the mandates of R.C. 3729.12. From 2017 on, the campsite use agreement made no mention of the policy allowing campsite users to sell their RVs with the rights to the campsite. It does appear that the policy to allow campsite users to engage in such sales continued at the discretion of appellees as recently as 2020 under the same seasonal campsite use agreement at issue here. However, in 2018, appellees notified campsite users that this policy would no longer apply to certain sections of the camp. This change occurred midseason and appellees unilaterally implemented the change.

{¶31} Finally, the unwritten campsite transfer policy was "revocable." *See Varjaski, supra,* at ¶ 12.

> "'At common law a parol license to be exercised upon the land of another creates an interest in the land, is within the statute of frauds, and may be revoked by the licensor at any time, no matter whether or not the licensee has exercised acts under the license, or expended money in reliance thereon. * * * [A] parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is revocable, at the option of the licensor, and *this although the intention was to confer a continuing right, and money has been expended by the licensee upon the*

10

*faith of the license. Such license cannot be changed into an equitable right on the ground of equitable estoppel.'"* (Emphasis in *Fling*).

*Fling v. Daniel,* 2019-Ohio-1723, 130 N.E.3d 319, ¶ 18 (4th Dist.), quoting *Yeager v. Tuning*, 79 Ohio St. 121, 125-126, 86 N.E. 657 (1908), quoting 31 A.C. Freeman, *American State Reports* 715 (1893) (annotation to *Lawrence v. Springer*, 49 N.J.Eq. 289, 24 A. 933 (1892)).

{¶32} Here, the campsite sale policy was unwritten and left to the discretion of appellees. Read in conjunction with the statutory requirements set forth in R.C. Chapter 3729 as discussed above, this policy cannot even be said to have constituted a parol license to be exercised on the land. This is because any campsite user who wished to exercise their "rights" under the unwritten campsite sale policy had to do so at appellees' approval. Thus, although there may have been a policy to conditionally allow the sale of an RV onsite, there never existed a license to sell, transfer, or assign the right to the campsite along with the sale of an RV. As such, this policy was completely revocable at appellees' discretion. Notwithstanding this, had such a license existed, it would have been a parol license and thus revocable at the discretion of appellees.

{¶33} Because the campsite transfer policy was a nonassignable and unwritten revocable policy, appellees did not breach the written campsite use agreement when they unilaterally changed the campsite sale policy midseason to deny future RV/campsite package deal sales. Therefore, appellants cannot establish a breach of the campsite use agreement and appellees are entitled to summary judgment on the breach of contract claim.

{¶34} Accordingly, appellants' first assignment of error is without merit.

11

Case No. 2023-G-0030

**Tortious Interference:**

{¶35} "Tortious interference with a business relationship is similar to tortious interference with a contract." *Gentile v. Turkoly*, 2017-Ohio-1018, 86 N.E.3d 991, ¶ 24 (7th Dist.). "'The elements of a tortious interference with a business relationship are (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom.'" *Redding v. United States Parachute Assn., Inc.,* 11th Dist. Geauga No. 2022-G-0024, 2023-Ohio-884, ¶ 38, quoting *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.,* 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, ¶ 24 (3d Dist.) "Tortious interference with a business relationship does not require the breach of contract, rather it is sufficient to prove that a third party does not enter into or continue a business relationship with the plaintiff." *Gentile, supra*, at ¶ 24.

{¶36} Appellants acknowledge that they did not have any business relationship with a prospective buyer but contend that this is not fatal to their tortious interference claim because the campsite had a 500-person waiting list. Appellants also cite two prior sales earlier in the 2020 camping season in support of their position. Thus, they argue there was no reason to have a buyer lined up, because they had no reason to believe the policy would be changed.

{¶37} This argument fails for two reasons. First, there is no evidence regarding any individual on the waitlist. While it is possible there were individuals on the waitlist who did not already own an RV and were willing to purchase one to obtain a campsite, there is a lack of evidence that any given individual was willing to purchase the Hathy's or the Ponsart's specific RVs on those specific sites. Thus, appellants failed to establish any

12

Case No. 2023-G-0030

business relationship or appellees' knowledge and subsequent intentional interference with it.

{¶38} Second, this argument fails because appellees were free to assert their own property interests. "There is no liability for tortious interference with a potential sales contract where the defendant acts to discourage the prospective contract which he believes in good faith to impair his legally protected interests." *Carman v. Entner*, 2nd Dist. Montgomery No. 13978, 1994 WL 28633, *7 (Feb. 2, 1994.), citing *Bell v. Le-Ge, Inc.,* 20 Ohio App.3d 127, 132, 485 N.E.2d 282 (8th Dist.1985). "One is privileged purposely to cause another not to perform a contract, or enter into, or continue a business relationship with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction." *Id.* quoting 4 Restatement of the Law 2d, Torts, Section 773, at 20 (1979).

{¶39} Appellees owned the campsite and had the privilege to limit the transfer, sale, or assignment of seasonal campsite use agreements. Appellees' stated reason for the policy change was specifically because they felt it was unfair to the 500 people on the waiting list to require a person wanting to become a seasonal camp user to buy an RV as a de facto condition precedent to obtaining a seasonal campsite. The campsites themselves did not belong to the appellants and appellants had no right to compel appellees to accept an assignment of the seasonal campsite use agreement contract to any third-party through appellants' sale of their RVs.

{¶40} Accordingly, appellants' second assignment of error is without merit.

Case No. 2023-G-0030

{¶41} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.